3651.000

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# WESTERN DIVISION

| | |
|---|---|
| JACK D. McCULLOUGH, | |
| Plaintiff, | |
| v. | No.: 17-cv-50116 |
| ILLINOIS STATE POLICE AGENT BRION HANLEY, et al., | Honorable Frederick J. Kapala<br>Courtroom 5300<br>Magistrate Judge Iain D. Johnston<br>Courtroom 5200 |
| Defendants. | |

### DEFENDANTS' MEMORANDUM OF LAW
### IN SUPPORT OF THEIR MOTION TO DISMISS

NOW COME Defendants, DeKalb County, Clay Campbell, Victor Escarcida, and Julie Trevarthen, by and through their attorneys, Ekl, Williams & Provenzale LLC, and for their Memorandum of Law in Support of their Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), state as follows:

### INTRODUCTION

Plaintiff alleges he was wrongfully convicted of a crime committed 60 years ago. In this regard, Plaintiff sues Defendant Campbell, as the former State's Attorney of DeKalb County, and assistant states attorneys, Defendants Escarcida and Trevarthen (collectively "the Prosecutor Defendants"), "for their actions in investigation of Plaintiff outside of court proceedings, and not for any action related to their official in-court duties, to the extent any are applicable, concerning the

prosecution of Plaintiff." Plaintiff names DeKalb County as an indemnitor. See [1], ¶15.

However, the specific factual allegations against the Prosecutor Defendants are insufficient to sustain any of the causes of action pled. Specifically, Plaintiff does not allege any conduct by the Prosecutor Defendants during the investigation process; in fact, Plaintiff contends that as a result of the investigators' conduct, "the prosecution was left with the belief that Plaintiff had enough time to commit the crime . . ." See [1], ¶99. Only then is Defendant Campbell specifically identified as a participant, wherein he allegedly "agreed that there was probable cause to arrest Plaintiff for murder even though they knew that there was not." See [1], ¶105.

Following this probable cause determination, Plaintiff was arrested in June of 2011. See [1], ¶106. Thereafter, the Prosecutor Defendants allegedly "relied on" one of the investigator's alleged falsified testimony (see [1], ¶115) and obtained false evidence against Plaintiff through two (2) jailhouse informants, Swaggerty and Reimann, without disclosing alleged deals they made with both informants (see [1], ¶116-19). However, none of the facts related to these categories of evidence include any specific investigative acts by the Prosecutor Defendants which would create a plausible claim. These sparse allegations fail to support Plaintiff's theory that the Prosecutor Defendants violated the Federal and State law and/or acted beyond their role as prosecutors when seeking Plaintiff's conviction.

## ARGUMENT

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F. 3d 732, 736 (7th Cir. 2014). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under the federal pleading standards, a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic v. Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955 (2007). Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly,* 550 U.S. at 570, 127 S. Ct. 1955).

Initially, Counts I (Violations of the 5th & 14th Amendments), II (Violation of the 4th Amendment), IV (Section 1983 Conspiracy), and V (Malicious Prosecution) expressly reference the "Defendant Officers" as the parties committing the alleged wrongdoing. See [1], ¶¶159, 160,166, 177, 178, 179, and 184. Nowhere does the Complaint define this term beyond the normal and customary usage of the word "officers," so as to include the Prosecutor Defendants. This definition of "officers" is further confirmed by the descriptions of the actual police officer Defendants named in the Complaint. See [1], ¶¶ 10, 12 & 13. Thus, in Counts I, II, IV, and V, Plaintiff does not plead a plausible claim against the Prosecutor Defendants given the failure

to specifically name them; accordingly, these Counts should be dismissed to the extent they may be brought against the Prosecutor Defendants.

The remaining counts, *i.e.* Counts III (Failure to Intervene), Count VI (IIED), and Count VII (Civil Conspiracy), are specifically brought against the "Defendants," and presuming this includes the Prosecutor Defendants, Plaintiff also fails to plead facts establishing a plausible legal claim against them since the only facts relate to their determination of probable cause to arrest or their interviewing of potential witnesses after arrest and prior to the trial. None of the alleged acts by the Prosecutor Defendants translate into plausible claims under Counts III, VI, and VII.

Regardless, to the extent Plaintiff intends on pleading all seven (7) against the Prosecutor Defendants, Plaintiff claims are defeated by absolute prosecutorial immunity. Although Plaintiff concludes relief is being sought against the Prosecutor Defendants for their "actions in investigation of Plaintiff outside of court proceedings" ([1], ¶15), he pleads absolutely no facts establishing their involvement in the investigation, and thereby creating a plausible claim in this regard. Instead, the specific facts relate to their function as prosecutors post-arrest, not as investigators. As such, any attempt to overcome the confusing lack of specificity by filing an amended complaint would not defeat the clear application of absolute immunity to this case.

Finally, the Prosecutor Defendants are employees of the State of Illinois, as a matter of well-established law. Accordingly, the sole allegation that they "were

employees of . . . the County of DeKalb, Illinois, who were acting in the scope of their employment in committing the misconduct" (see [1], ¶205) does not state a cause of action against the County of DeKalb for indemnity. Therefore, Count IX (State Law Indemnification) should be dismissed with prejudice.

> I.  Plaintiff's Lack of Specificity Requires Dismissal of the Complaint.

By specifying the "Defendant Officers" are the alleged wrongdoers in Counts I, II, IV, and V, Plaintiff expressly excludes the Prosecutor Defendants from these claims since they are not "officers," at least according to normal parlance, and the pleading does not, otherwise, define the Prosecutor Defendants as such. Similarly, the Complaint's indiscriminate use of the term "Defendants" within the factual allegations without specific reference to the party or parties makes it impossible for the Prosecutor Defendants to know which factual allegations are directed against them as part of the collective "Defendants." In fact, Plaintiff specifically names the Prosecutor Defendants in only four (4) paragraphs. See [1], ¶¶105, 123, 124 & 131.

To state a claim under Section 1983, the complaint must allege facts sufficient to demonstrate the Prosecutor Defendants were "personally involved" in the alleged deprivation of Plaintiff's constitutional rights. See *Palmer v. Marion County*, 327 F. 3d 588, 594 (7th Cir. 2003). In other words, to state a constitutional claim Plaintiff must adequately plead the Prosecutor Defendants "participated directly in the constitutional violation." *Hildebrandt v. Ill. Dep't of Natural Resources*, 347 F. 3d 1014, 1039 (7th Cir. 2003). A plausible claim requires "each defendant . . . know[s] what he or she did that is asserted to be wrongful." *Bank of*

*America v. Knight*, 725 F. 3d 815, 818 (7th Cir. 2013) (after the rulings in *Twombly* and *Iqbal*).

In *Bank of America*, the Court specifically held "[a] complaint based on a theory of collective responsibility must be dismissed." *Id.* Here, the Prosecutor Defendants are unable to decipher which of the general factual allegations involve them and which counts are directed at them given Plaintiff's use of the collective term "Defendants," so the Complaint should be dismissed since it fails to meet the requirements set forth in *Twombly* and *Iqbal*, above. In fact, the notice pleading standard of Rule 8 is not met without identifying the misconduct that can be attributed to the particular defendant. *Id.*; *see also Carter v. Dolan*, No. 08-C-7464, 2009 WL 1809917, at *3 (N.D. Ill. June 25, 2009) (reference to multiple officers as "defendant officers" in each of the factual allegations does not provide sufficient notice of the specific wrongdoings alleged).

To the extent Plaintiff alleges specific facts related to the Prosecutor Defendants, those allegations are purely prosecutorial in nature and not investigatory, thereby further undermining Plaintiff's conclusion that they are being sued based on their "actions in investigation of Plaintiff outside of court proceedings" ([1], ¶15). As such, Plaintiff fails to plead any specific facts establishing the Prosecutor Defendants engaged in investigatory conduct outside of court proceedings which might plausibly establish liability for the alleged constitutional injury. On this basis alone, the Complaint must be dismissed against the Prosecutor Defendants.

## II. Absolute Immunity Applies to the Specific Conduct Alleged against the Prosecutor Defendants.

A prosecutor has absolute immunity for his conduct resulting in a plaintiff's conviction. *Imbler v. Pachtman*, 424 U.S. 409, 424, 96 S. Ct. 984, 992 (1976). The extent to which the immunity applies depends on the type of work she performed and the factual premises of the plaintiff's claims, or the "functional" approach. *Bianchi v. McQueen*, 818 F.3d 309, 318 (7th Cir. 2016). Absolute immunity is not restricted to what goes on in the courtroom since the role of advocate for the State involves actions apart from the courtroom, including efforts to control a witness' testimony and acts undertaken in preparing for the initiation of judicial proceedings. *Bianchi*, 818 F. 3d at 318, citing *Buckley v. Fitzsimmons*, 509 U.S. 259, 272-73, 113 S. CT. 2606 (1993).

Under the "functional" analysis, prosecutors are absolutely immune for (1) eliciting false testimony and suppressing evidence favorable to the defendant (*Imbler*, 424 U.S. at 409), (2) presenting false statements in support of probable cause (*Burns v. Reed*, 500 U.S. 478, 486-87, 111 S. Ct. 1934 (1991)), (3) consulting with police, observing evidence, and preparing its presentation before a grand jury or in a court proceeding (*Buckley*, 509 U.S. at 273), (4) preparing and filing of the charging documents, even when allegedly based on falsified information (*Kalina v. Fletcher*, 522 U.S. 118, 129, 118 S. Ct. 502 (1997)), and (5) failing to disclose impeaching evidence, including agreements made with informants (*Van de Kamp v.*

*Goldstein*, 555 U.S. 335, 343-44, 129 S. Ct. 855 (2009)). Each of these rulings apply directly to the specific facts alleged against the Prosecutor Defendants in this case.

Other than a single conclusory allegation the Prosecutor Defendants are being sued "for actions in investigation of Plaintiff outside of court proceedings" ([1], ¶15), they are only specifically identified in four (4) factual allegations, namely:

(1) the Defendant Officers coordinated their investigation with Defendant Campbell and all agreed that there was probable cause to arrest Plaintiff for murder even though they knew that there was not ([1], ¶105);

(2) in April of 2012, or 8 months after Plaintiff's arrest, Swaggerty was approached by Defendant Campbell to see if he would be willing to testify in Plaintiff's case ([1], ¶123);

(3) Swaggerty agreed to make inculpatory statements about Plaintiff in exchange for having Defendant Trevarthen testify on his behalf at an upcoming sentencing hearing ([1], ¶124); and

(4) on September 12, 2012, or on the eve of the bench trial, Defendants Escarcida and Trevarthen allegedly instructed Reimann to deny there was a deal or any promises relating to his agreement to testify against Plaintiff ([1], ¶131).

Additionally, Plaintiff denies any knowledge of the existence of any deals or promises with Reimann and/or Swaggerty during his trial. See [1], ¶127 & 133.

However, under the "functional" approach, all of the specific allegations made against the Prosecutor Defendants are prosecutorial in nature. Importantly, there are no factual allegations, which specifically name the Prosecutor Defendants, establishing they engaged in any falsification or fabrication of evidence, particularly since their specific acts all occurred once probable cause existed. The existence of probable cause further shows the conduct took place during the prosecutorial stage. *Harris v. City of Chicago*, 2015 WL 5445012, at *3 (N.D. Ill. Sept. 15, 2015), *citing Whitlock v. Brueggemann*, 682 F.3d 567, 580 (7th Cir.2012). Thus, each of the specific allegations levied against the Prosecutor Defendants occurred during the prosecutorial stage.

Further, when this Court considers each factual allegation independently, the specific conduct is prosecutorial in nature. First, Defendant Campbell's consultation with the "Defendant Officers" when determining sufficient probable cause existed to arrest Plaintiff (see [1], ¶105) is prosecutorial in nature. See *Burns*, 500 U.S. at 486-87; *Buckley*, 509 U.S. at 273. Second, post-arrest and pre-trial conduct including Defendant Campbell's contact with a possible witness (Swaggerty) to determine if he had admissible evidence, and then making a deal in exchange for his testimony (see [1], ¶¶ 123 & 124) is again prosecutorial in nature, even if the prosecutor knows the testimony to be false. See *Imbler*, 424 U.S. at 409.

Third, the alleged meeting between Defendants Escarcida and Trevarthen and a witness (Reimann) on the eve of trial and their alleged effort to control the presentation of his testimony (see [1], ¶131) is again prosecutorial. See *Bianchi*,

818 F. 3d at 318, *citing Buckley*, 509 U.S. at 272-73. Finally, any failure to disclose the alleged deals made with Swaggerty and Reimann still triggers absolute immunity. See *Van de Kamp*, 555 U.S. at 343-44. Accordingly, none of the specific facts levied against the Prosecutor Defendants overcome the absolute immunity afforded prosecutors.

Absolute prosecutorial immunity applies equally to the State law claims (Counts V, VI, and VII), also. See *Bianchi v. McQueen*, 2016 IL App (2d) 150646, ¶52 (a prosecutor is entitled to absolute immunity for acts undertaken as an advocate for the state in preparing for the initiation of judicial proceedings or trial); *White v. City of Chicago*, 369 Ill. App. 3d 765, 769-70, 861 N.E.2d 1083, 1088-89 (1st Dist. 2006) (a prosecutor is absolutely immune for those activities intimately associated with the judicial phase of the criminal process). Accordingly, given the specific acts attributed to the Prosecutor Defendants, they are absolutely immune from both the federal and state law claims outlined in Counts I through VII.

    III.    <u>Count III Fails to State a Claim.</u>

The prevailing authority governing failure to intervene claims brought against prosecutors holds those claims do not exist given a prosecutor's continuing role as advocate for the state. See *Gordon v.* Devine, NO. 08-CV-377, 2008 WL 4594354 at *17 (N.D. Ill. October 14, 2008); *Hobbs v. Cappelluti*, 899 F.Supp.2d 738, 773 (N.D. Ill. 2012); *Andrews v. Burge*, 660 F.Supp.2d 868, 876 n.6 (N.D. Ill. 2009). The only possible exception is when the allegations show the prosecutor was exercising police powers as part of the investigation, for example, and had a

realistic opportunity to prevent the alleged violation of constitutional rights. See *Harris v. City of Chicago*, No. 14-CV-4391, 2015 WL 1331101 at *6 (N.D. Ill. March 19, 2015), citing *Rivera v. Lake County*, 974 F.Supp.2d 1179, 1191 (N.D. Ill. 2013).

Here, given the complete lack of facts demonstrating the Prosecutor Defendants were involved in the investigation, or otherwise, exercised police powers and had a realistic opportunity to prevent the Defendant Officers from allegedly violating Plaintiff's constitutional rights, Count III should be dismissed. In this case, the only specific facts alleged against the Prosecutor Defendants relates to their role as advocates for the State, thereby precluding any claim for failure to intervene.

    IV.    <u>Counts IV and VII Fail to Allege a Conspiracy.</u>

To establish a prima facie case of a civil conspiracy, a plaintiff must show (1) an express or implied agreement among defendants to deprive plaintiff of his or her constitutional rights and (2) actual deprivations of those rights in the form of overt acts in furtherance of the agreement. *Scherer v. Balkema*, 840 F. 2d 437, 442 (7th Cir. 1988). "Vague and conclusory allegations of the existence of a conspiracy are not enough to sustain a plaintiff's burden [sic] a complaint must contain factual allegations suggesting that the defendants reached a meeting of the minds." *Amundsen v. Chicago Park Dist.,* 218 F.3d 712, 718 (7th Cir.2000). In this regard, a plaintiff must allege the "what, when, why, and how" of the defendants' supposed agreement to deprive him of his constitutional rights, and merely asserting that a conspiracy existed does not meet his burden. See *Evers v. Reak*, 21 F. App'x 447,

450, 2001 WL 1117078 (7th Cir. 2001), *quoting Brokaw v. Mercer County*, 235 F. 3d 1000, 1016 (7th Cir. 2001).

Based on Plaintiff's failure to allege specific conduct by the Prosecutor Defendants during the investigatory stage, there is absolutely no factual basis to demonstrate they had an express or implied agreement with one or more of the "Defendant Officers" to deprive Plaintiff of his constitutional rights. Initially, Count IV (Section 1983 Conspiracy) is only directed at the "Defendant Officers," as argued above. Thus, the allegations that they "agreed . . . to act in concert in order to deprive Plaintiff of his constitutional rights" ([1], ¶177) and "further conspired to deprive Plaintiff of exculpatory information to which he was lawfully entitled" ([1], ¶178) does not include the Prosecutor Defendants. As such, there are no allegations the Prosecutor Defendants agreed to deprive Plaintiff of his constitutional rights.

Next, although Count VII (State law Conspiracy) is directed at the "Defendants" collectively, there are no facts alleged to demonstrate the "what, when, why, and how" of the Prosecutor Defendants' supposed agreement to deprive Plaintiff of his constitutional rights. Recall, the only specific facts alleged against the Prosecutor Defendants involve the determination of probable cause to arrest and their efforts to interview and present witness testimony at trial. There is nothing to even imply the Prosecutor Defendants were ever involved in any aspect of the investigation, and thereby, co-conspirators therein.

Therefore, Plaintiff fails to plead sufficient facts to allege the Prosecutor Defendants were part of any conspiracy to deprive Plaintiff of his constitutional

rights in violation of either federal (Count IV) or state (Count VII) law. Accordingly, Counts IV and VII should be dismissed.

### V. Count VI (IIED) Violates the Statute of Limitations.

Plaintiff's claim for Intentional Infliction of Emotion Distress is subject to the Illinois Local Government and Governmental Employees Tort Immunity Act's one-year statute of limitations[1]. 745 ILCS 10/8-1 (West 2016). Further, IIED is not a continuing tort. See *Bridewell v. Eberle*, 730 F. 3d 672, 678 (7th Cir. 2013). Instead, it arises when the injury occurs, which in this case was when Plaintiff was charged and convicted. According to *Bridewell*, the fact the Prosecutor Defendants did not retract their positions regarding Plaintiff's guilt does not extend the limitations period. Instead, the decision in *Bridewell* established that a claim for IIED accrues at the date of Plaintiff's arrest, and the continuation of the prosecution does not restart the running of the state of limitations. *Bridewell*, 730 F. 3d at 678; *see also Chatman v. City of Chicago*, No. 14 C 2945, 2015 WL 1090965 at *9 (N.D. Ill. March 10, 2015) ("*Bridewell* also forecloses any argument that the IIED claim constitutes a continuing tort or violation); *but see Smith v. Burge*, No. 16 C 3403, 2016 WL 6948387 at *15 (N.D. Ill. November 11, 2016) (plaintiff's IIED claim did not accrue

---

[1]Plaintiff alleges the Prosecutor Defendants are employees of DeKalb County, thereby triggering the application of the one-year Illinois tort immunity statute. However, as argued below, the County Defendants are employees of the State of Illinois. See Section VI, below. Regardless, the two-year statute of limitations applicable to state employees has also expired before the filing of this case. See *Brooks v. Ross*, 578 F.3d 574, 578 (7th Cir. 2009).

until the conviction was set aside wherein the defendants police officers allegedly engaged in torture).

In this case, Plaintiff was arrested in June of 2011 ([1], ¶106) and convicted on September 14, 2012 ([1], ¶144). Further, Plaintiff's legal claims against the Prosecutor Defendants centers on their conduct in securing the conviction; nothing more. No facts alleged demonstrate the Prosecutor Defendants engaged in extreme and outrageous conduct during, or much less involved in, any post-trial proceedings.

Under Illinois law, a continuing tort is occasioned by continuing unlawful acts and conduct, not by continual ill effects from an initial violation. See *Feltmeier v. Feltmeier*, 207 Ill. 2d 263, 798 N.E.2d 75, 85 (2003). Thus, in this case, the only conduct alleged against the Prosecutor Defendants, which could arguably constitute extreme and outrageous, relates to their effort to arrest and/or prosecute Plaintiff. Thus, under Illinois law, Plaintiff had until September of 2013 to file an IIED claim against the Prosecutor Defendants related to their role as the advocates of the state who secured his arrest warrant or prosecuted his case. Consistent with *Bridewell,* the statute of limitations related to the Prosecutor Defendants' efforts to arrest and/or try Plaintiff expired in 2013, thereby requiring the dismissal of Count VI.

I. <u>DeKalb County is not an Indemnitor.</u>

In Count IX, Plaintiff seeks indemnification from DeKalb County, alleging the Prosecutor Defendants were employees of the county acting in the scope of their employment. See [1], ¶205. However, well-established law holds the Prosecutor Defendants are employees/officials of the State of Illinois. See *Bianchi*, 2016 IL App

(2d) 150646, ¶34 ("The Illinois Supreme Court has held that State's Attorneys and ASAs are state officials."), *citing Ingemunson v. Hedges*, 133 Ill. 2d 364, 367, 549 N.E.2d 1269 (1990); see also *Price v. State*, 354 Ill. App. 3d 90, 93, 820 N.E.2d 104, 107 (1st Dist. 2004). Accordingly, Count IX (Indemnification) should be dismissed against the County of DeKalb as the alleged employer of the Prosecutor Defendants.

## CONCLUSION

WHEREFORE, Defendants, DeKalb County, Clay Campbell, Victor Escarcida, and Julie Trevarthen, respectfully request this Honorable Court dismiss Plaintiff's Complaint with prejudice to the extent it is brought against the individual Defendants in their roles as prosecutors with absolute immunity and against Defendant, DeKalb County, as their alleged employer and indemnitor.

Respectfully Submitted By:

  s/ Terry A. Ekl
Terry A. Ekl [ #0727105 ]
Ekl, Williams & Provenzale LLC
Two Arboretum Lakes
901 Warrenville Road, Suite 175
Lisle, IL 60532
(630) 654-1624
(630) 654-8318 *Facsimile*
tekl@eklwilliams.com