IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| JACK D. McCULLOUGH, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 17 CV 50116 |
| | ) | |
| v. | ) | Hon. Frederick J. Kapala |
| | ) | District Judge |
| ILLINOIS STATE POLICE AGENT | ) | |
| BRION HANLEY, *et al.*, | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendants. | ) | |
| | ) | |

## PLAINTIFF'S RESPONSE TO SEATTLE DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P 12(b)(2)

NOW COMES, Plaintiff Jack D. McCullough, by and through his attorneys Loevy & Loevy, and hereby respectfully submits this response to Defendants Irene Lau, Cloyd Steiger, and Michael Ciesynski's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(2). Dkt. 85. In opposition to Defendants' motion, Plaintiff states as follows:

### Introduction

Plaintiff Jack McCullough alleges that Defendants Lau, Steiger, and Ciesynski (the "Seattle Defendants"), though based in Seattle, conspired with Illinois law enforcement officers to falsely implicate him in an Illinois murder he did not commit. According to the Amended Complaint, the Seattle Defendants played an important role in prosecuting Plaintiff—they arrested him, they interrogated him, they drafted the demonstrably false affidavit that convinced a court to approve his arrest and extradition to Illinois. Indeed, according to the Illinois State Police,

"had it not been for the assistance of the Seattle Police Department, it is unlikely that charges against Mr. McCullough would have been approved." Dkt. 79, ¶153.

The Seattle Defendants seek to dismiss Plaintiff's complaint for lack of personal jurisdiction by pretending that all they did was transport Plaintiff to Illinois. But that is not what is alleged in the Amended Complaint, which must be accepted as true because the Seattle Defendants provide no evidence to the contrary. According to that complaint, the Seattle Defendants knew they were framing a man for murder in Illinois, so the fact that he is now suing them in Illinois should come as no surprise. Defendants' motion should be denied.

## Legal Standard

There are two possible standards for reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(2): the preponderance of the evidence standard, after the Court conducts an evidentiary hearing, and the far lower *prima facie* standard when the motion is decided solely upon written materials submitted by the moving party. *See Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003).

Where the Court will make its decision solely based on written submissions, a plaintiff need only make "a *prima facie* showing that personal jurisdiction is conferred under the relevant jurisdictional statute." *Nelson by Carson*, 717 F.2d at 1123 (citing *O'Hare Int'l Bank v. Hampton*, 437 F.2d 1173, 1176 (7th Cir. 1971)). A *prima facie* showing means that "this court accepts all well-pleaded allegations in the complaint as true." *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002)

(citing *Tobin for Governor v. Illinois State Bd. of Elections*, 268 F.3d 517, 521 (7th Cir. 2001)). In making these determinations, Plaintiff is entitled to have all disputes concerning relevant facts decided in his favor unless "controverted by an affidavit of the defendant to which the plaintiff has not responded." *Citadel Group Ltd. v. Merie West Medical Center, Inc.*, 2007 WL 5160444, *2 (N.D. Ill. June 13, 2007).

## Background

Plaintiff alleges that Defendants jointly fabricated false evidence and suppressed exculpatory evidence from him in order to ensure that he was convicted of a crime that he did not commit. Dkt. 79, ¶3. Namely, in 2012, Plaintiff Jack McCullough was wrongly convicted of kidnapping and murdering Maria Ridulph, a crime that took place in 1957. Dkt. 79, ¶183.

The Seattle Defendants were integral to that wrongful conviction. They maliciously engineered Plaintiff's arrest by submitting a perjured affidavit to obtain a warrant for Plaintiff's arrest, falsely claiming that Plaintiff's alibi did not exonerate him of the crime, among other lies. Dkt. 79, ¶¶127-28. Knowing that Plaintiff would stand trial in Illinois, they then arrested, interrogated, and transported Plaintiff from Seattle to Sycamore, Illinois. Dkt. 79, ¶¶148-49. Defendant Lau then lied about his interrogation to make his answers appear inculpatory when they were not, all in an effort to further his prosecution in Illinois for murder. Dkt. 79, ¶¶144-45. In fact, "had it not been for the assistance of the Seattle Police Department, it is unlikely that charges against Mr. McCullough would have been approved." Dkt. 79, ¶153.

The Seattle Defendants then went beyond their activities in Seattle and traveled to Illinois to continue their participation in the Ridulph investigation. While Defendants Steiger and Ciesynski transported Plaintiff to Illinois, they questioned Plaintiff extensively along the way, going so far as to take Plaintiff to the scene of the crime. Dkt. 79, ¶¶148-49. Thereafter, Defendants Steiger and Ciesynski returned to Illinois to meet with Illinois Defendants Hanley, Campbell, Trevarthen, and Escarcida about the false charges against Plaintiff. Dkt. 79, ¶150. All of the Seattle Defendants returned again to Illinois to testify in Plaintiff's criminal trial. Dkt. 79, ¶151. Moreover, Defendant Lau withheld the video recording of her interrogation of Plaintiff and then testified falsely about what took place during that interrogation. Dkt. 79, ¶152.

In sum, rather than simply performing ministerial actions in arresting and transporting Plaintiff at someone else's behest, the Seattle Defendants falsified evidence ensuring that he would be arrested and then convicted for an Illinois murder, traveling to Illinois repeatedly to carry out their plan.

## Argument

Determinations of personal jurisdiction are governed by the law of the forum state and the Due Process Clause. Fed. R. Civ. P. 4(k)(1); *Felland v. Clifton*, 682 F.3d 665, 672 (7th Cir. 2012) ("The court's exercise of jurisdiction over the defendant must be authorized by the forum state's personal-jurisdiction statute and also must comport with the requirements of the Fourteenth Amendment's Due Process Clause."). In Illinois, the "long-arm statute permits the court to exercise

4

jurisdiction to the full extent permitted by the Due Process Clause of the Fourteenth Amendment." *Brook v. McCormley*, 873 F.3d 549 (7th Cir. 2017).[1] Thus, the inquiry centers on whether exercising personal jurisdiction over the Seattle Defendants comports with due process.

I. **Exercising Personal Jurisdiction Comports with Due Process**

The Seattle Defendants are correct to point out that the Due Process Clause "protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful contacts, ties or relations." *Burger King Corp.*, 471 U.S. at 471-72. However, "the Due Process Clause may not readily be wielded as a territorial shield to avoid interstate obligations that have been voluntarily assumed." *Id.* at 474.

To establish specific personal jurisdiction, three requirements exist: "(1) the defendant must have purposefully availed himself of the privilege of conducting business in the forum state or purposefully directed his activities at the state; (2) the alleged injury must have arisen from the defendant's forum-related activities: and (3) the exercise of jurisdiction must comport with traditional notions of fair play and substantial justice." *Felland*, 682 F.3d at 673 (citations omitted).

---

[1] Notably, in Illinois, the "long-arm statute contains a 'catch-all' provision that permits its courts to exercise jurisdiction on any basis permitted by the Illinois and United States Constitutions." *Kinslow*, at *4 (citing *Hyatt Int'l Corp.*, 302 F.3d at 714-15 (internal quotations omitted)). "The Seventh Circuit has 'concluded that normally there is "no operative difference" between Illinois constitutional and federal constitutional limits on personal jurisdiction.'" *Drobny v. Lanhan*, No. 16 C 1912, 2016 WL 9211744, at *2 (N.D. Ill. Sept. 23, 2016), *aff'd*, 680 F. App'x 286 (7th Cir. 2017) (citing *Philos Techs., Inc. v. Philos & D, Inc.*, 802 F.3d 905, 912 (7th Cir. 2015)).

5

The Seattle Defendants argue that this Court's exercise of personal jurisdiction over them would violate the Due Process Clause because Plaintiff has failed to allege minimum contacts. Dkt. 85. These arguments fail entirely. Plaintiff's Complaint sets forth a *prima facie* case that exercising personal jurisdiction over the Seattle Defendants does not violate Due Process, and the Seattle Defendants have failed to show that this Court's exercise of personal jurisdiction would cause any burden, let alone one that would be so undue as to warrant dismissing this action and forcing Plaintiff to pursue his claims against the Seattle Defendants in Washington State. The Seattle Defendants' motion should be denied.

### A. The Seattle Defendants Purposefully Directed Their Activities at Illinois

The Seventh Circuit distilled a three-factor test from *Calder v. Jones,* 465 U.S. 783, 789-90 (1984) to show when a defendant purposefully directed their activities at the forum state: "(1) intentional conduct (or 'intentional and allegedly tortious' conduct); (2) expressly aimed at the forum state; (3) with the defendant's knowledge that the effects would be felt – that is the plaintiff would be injured – in the forum state." *Tamburo v. Dworkin*, 601 F.3d 693, 703 (7th Cir. 2010).

#### 1. The Seattle Defendants' Conduct was Intentional

Defendants do not dispute that their conduct, as alleged in the Amended Complaint, was intentional. That concession is appropriate. As alleged, the Seattle Defendants took numerous, deliberate steps to not only participate in the investigation of the Maria Ridulph case, but actively worked to ensure that Plaintiff

6

was convicted.

### 2. The Seattle Defendants' Conduct was Expressly Aimed at Illinois

There can be no doubt that the Seattle Defendants' conduct was expressly aimed at Illinois. From the start of their participation in the Ridulph investigation, the Seattle Defendants knew that they were investigating a crime committed in Illinois, involving criminal charges that would be brought in Illinois, a trial that would take place in Illinois, and, if convicted by an Illinois judge, imprisonment in Illinois. Dkt. 79, ¶¶121-25. In other words, the Seattle Defendants' every act was committed knowing that the effects would be felt in Illinois, not Washington.

Defendants Steiger and Ciesynski conspired with Defendants Hanley and Damasky from Illinois; Steiger wrote and signed the probable cause affidavit, approved by Ciesynski, which included false information and induced a judge to permit Plaintiff's arrest for an Illinois murder; they travelled to Plaintiff's home, former employer's office, and contacted Plaintiff under false pretenses; they extradited Plaintiff; interrogated Plaintiff; testified against Plaintiff in Illinois; and travelled to Illinois three times during the Ridulph investigation. Dkt. 79, ¶¶125, 127, 131, 148, 151.

Likewise, Defendant Lau falsely reported her interrogation of Plaintiff, to suggest that he was guilty; she falsely testified against Plaintiff in Illinois; and withheld the video of her interrogation of Plaintiff.79, ¶¶144-47, 151-52.

In sum, the Seattle Defendants were inextricably intertwined in Plaintiff's

7

investigation and criminal prosecution. Each of the Seattle Defendants' actions was undertaken voluntarily—and because of this extensive interaction, each of these Defendants purposefully directed their activities at the State of Illinois.

The Seattle Defendants contend that Steiger and Ciesynski's actions in *actually travelling to* Illinois are not sufficient to show purposefully directed activity, Dkt. 85, at 7-8, but travelling to Illinois is just one of many ways by which the Seattle Defendants directed their actions at the state of Illinois. These Defendants expressly aimed their conduct at Illinois when they targeted, engineered the arrest of, and interrogated Plaintiff to convict him of an Illinois homicide. Travelling to Illinois (during three different trips) is simply further evidence that the Seattle Defendants' conduct was expressly aimed at Illinois.

The Seattle Defendants cite *Smith v. Jefferson* to argue that they did not purposely direct their activities toward Illinois by acting in furtherance of the conspiracy with the Illinois-based Defendants. 378 Fed. Appx. 582, 585-86 (7th Cir. 2010). But *Smith* is easily distinguishable. In *Smith*, the Defendants had no contact whatsoever with Illinois, apart from an alleged conspiracy. This case is a far cry from *Smith*, where the Seattle Defendants are being sued for their actions, and not just the existence of a conspiracy.

The Defendants' reliance on *Walden v. Fiore*, 134 S. Ct. 1115 (2014), Dkt. 85 at 4-5, fares no better. There, the High Court emphasized that "it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him," but found it lacking in that because there was

8

nothing to show that the non-resident defendant had ever "traveled to, conducted activities within, contacted anyone in, or sent anything or anyone to Nevada." *Id*. at 1125. Applying the effects test applicable here, the Supreme Court found that an officer who arrested someone in Georgia (after stopping them and searching their carry-on bags at the airport), *id*. at 1119, prepared a warrant application and sent that to a State's Attorney's office in Georgia had not done anything directed at the State of Nevada. *Id*. And, for good reason: the officer was investigating a crime that he believed happened in front of him, not in another jurisdiction. The situation here is completely different—the Seattle Defendants falsely arrested Plaintiff for a homicide in Illinois, knowing that all of their actions would be directed at Illinois.

Furthermore, Defendants have ignored *Calder v. Jones*. 465 U.S. 783 (1985). In *Calder*, the Supreme Court upheld personal jurisdiction by relying upon the fact that the defendant's intentional tortious actions "were expressly aimed" at the forum state. *Calder*, 465 U.S. at 789. The Supreme Court looked to the fact that the defendant "knew that the brunt of [their] injury would be felt by respondent in the" forum state. *Id*. at 784. Similarly, in this case, the Seattle Defendants knew that their investigation was aimed at Illinois, knew that the Illinois Defendants would prosecute Plaintiff in Illinois, and knew that he would suffer harm in Illinois – not Washington. Dkt. 79, ¶¶121-51. In this way, Plaintiff was not the Seattle Defendants' "only link" to Illinois; their connection to the investigation, prosecution, and resultant trial are additional links to Illinois. Accordingly, the Court would not violate Due Process by exercising personal jurisdiction over the Seattle Defendants.

9

The Seventh Circuit has followed the *Calder* test in situations analogous to this case. For example, in *Tamburo*, the Seventh Circuit held that defendants who targeted a plaintiff in Illinois via online postings and defamation had purposefully directed activity at Illinois because they knew that "he lived and operated his software business in Illinois and would be injured there." *Tamburo*, 601 F.3d at 697. Additionally, in *Felland v. Clifton*, the Seventh Circuit held that a defendant based in Arizona who defrauded plaintiffs in Wisconsin had expressly aimed activity at Wisconsin by knowingly contacting the plaintiffs in Wisconsin with assurances to keep them compliant. 682 F.3d 665, 675-76 (7th Cir. 2012). Other courts have reached the same conclusion. *Fletcher v. Doig*, 125 F.Supp.3d 697, 709-10 (N.D. Ill. Sept. 30, 2014) (finding that non-resident defendants purposefully directed activity at Illinois by sending a letter that resulted in the loss of a sale at an auction); *Hamilton Memorial Hosp. Dist. v. Toelle*, 2013 WL 1130888, *2-5 (S.D. Ill. Mar. 18, 2013) (finding that a defendant employee's breach of contract was purposefully directed at plaintiff); *Miessen*, 998 F.Supp.2d at 710 (personal jurisdiction appropriate although only contact was through three months of occasional telephone and e-mail negotiations).

The authorities cited by the Defendants are not to the contrary. For one, nearly all of the authorities are non-binding. In addition, none of these cases have the substantial investigative and purposeful action that is present here. Defendants may want to cherry-pick things from individual cases but it is the totality of the allegations in the complaint that illustrates Plaintiff has more than amply made out

a *prima facie* case of personal jurisdiction. For example, in *Webber v. Michaela*, 633 F.2d 518, 519 (8th Cir. 1980), cited by Defendants, Dkt. 85, at 7-8, the *only* contact the defendant had with the forum state was testifying at plaintiff's trial, and in *Steelman v. Carpenter*, 124 F.Supp.2d 219, 224 (D. Del. 2000), personal jurisdiction was denied because contact was limited to extradition.

As set forth in detail above, however, the Seattle Defendants did much more than simply perform the ministerial task of transporting a prisoner or appearing solely to testify. See Dkt. 79, ¶¶126-28, 130-34, 139, 142, 144-53. Quite unlike *Webber* and *Steelman*, where there was only one, limited form of contact, there are myriad actions taken by the Seattle Defendants against Plaintiff, such as their ongoing agreement with the Illinois Defendants to directly target and work toward convicting Plaintiff for crimes he did not commit.

While it is true that purposeful directed activity cannot manifest solely from the actions of the plaintiff or a third party, *Helicopteros*, 466 U.S. 417, this truism has no application here. As detailed in the Amended Complaint, Plaintiff certainly did not direct the Seattle Defendants to have anything to do with Illinois. As for the Illinois investigators, although they conspired with the Seattle Defendants, none of them forced the Seattle Defendants to investigate an Illinois murder or travel to Illinois repeatedly to continue Plaintiff's malicious prosecution. Instead, it was their own actions in maliciously prosecuting Plaintiff that illustrate how the Seattle Defendants purposefully directed their activities at Illinois.

### 3. The Seattle Defendants Knew the Effects of Their Activities Would be Felt in Illinois

The Seattle Defendants knew that the Ridulph investigation was about crimes committed in Illinois, criminal charges that would be based in Illinois, a trial that would take place in Illinois, and, if convicted, Plaintiff would suffer his wrongful conviction in Illinois. The Seattle Defendants voluntarily acted, with conduct expressly aimed at Illinois, and knowing that any result of their conduct would be felt in Illinois.

The Seattle Defendants briefly reference *Cent. States, Se. and Sw. Areas Pension Fund v. Reimer Express World Corp.* for the non-controversial proposition "that generalized foreseeability of the defendant's action in the forum is insufficient for exercising jurisdiction." 230 F.3d 934, 943 (7th Cir. 2000); Dkt. 85, p. 6. But *Cent. States* also defines the inquiry as, "whether the defendant's conduct and connection with the forum are such that it should reasonably anticipate being hailed into court there." *Cent. States*, 230 F.3d at 943. If the Seattle Defendants framed Plaintiff for murder in Illinois, as Plaintiff alleges, it should come as no surprise to them that they are being sued in Illinois for their actions.

Indeed, in *Felland*, the Seventh Circuit held that personal jurisdiction was proper over an Arizona resident whose only contacts were communications with Wisconsin residents to induce them to purchase property in Mexico. *Felland*, 682 F.3d at 677 ("The communications were not just incidental but are central to the fraudulent course of conduct alleged in the complaint, and are sufficient as evidence

of both the factual and proximate cause of Felland's alleged injury. Felland's injury 'arises out of' Clifton's contacts with Wisconsin.").

Undoubtedly, the Seattle Defendants acted intentionally, aimed at Illinois, and with knowledge that Plaintiff would be injured in Illinois. As such, the Seattle Defendants' motion to dismiss should be denied.

### B. This Suit Arose Out of the Seattle Defendants' Purposefully Directed Activities

The Seventh Circuit has explained that a claim must "arise directly out of the defendants' contacts with Illinois." *Tamburo,* 601 F.3d at 709. However, there is no defined test to demonstrate when a claim has arisen out of a defendant's contact with the forum state. *Felland*, 682 F.3d at 676-77 ("We noted in *Tamburo* that the Supreme Court has not elaborated on the details of this requirement, and the circuits have been split on how close the causal connection must be.").

This action plainly arises directly from the Seattle Defendants' contacts with Illinois, and their contacts with Illinois are not "random, fortuitous or attenuated." *Miessen*, 998 F.Supp.2d at 710. Plaintiff's criminal prosecution was largely predicated on the Seattle Defendants' false arrest warrant application and subsequent misconduct. In fact, the director of the Illinois State Police stated that, "had it not been for the assistance of the Seattle Police Department, it is unlikely that charges against Mr. McCullough would have been approved." Dkt. 79, ¶153.

Given the foregoing, Plaintiff has more than met his burden of illustrating that this cause of action arose out of the Seattle Defendants' contacts between them

13

and Illinois. Put differently, there can be no question Plaintiff has far exceeded his low burden of showing a *prima facie* case as to the propriety of jurisdiction in this District. As such, the Seattle Defendants' motion to dismiss fails.

### C. Exercising Jurisdiction over the Seattle Defendants Comports with Fair Play and Substantial Justice

When deciding whether personal jurisdiction would comport with fair play and substantial justice, the inquiry is based on: "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Tamburo*, 601 F.3d at 709.

When challenging personal jurisdiction on the basis of undue burden or hardship, a defendant must submit evidence illustrating to the Court that there is a *bona fide* burden imposed by the litigation and that this Court's jurisdiction would be so unfair and so burdensome that, despite technology and despite Defendants' actions directed toward the forum state, that jurisdiction is nonetheless improper. Defendants have refused to meet this burden. Indeed, while this is one of the rare instances where the Court may consider matters outside the pleadings on a motion to dismiss, *Miessen*, 998 F.Supp.2d at 708, defendants have not presented the Court with any sworn declarations illustrating hardship. Keeping in mind that when the Court is basing its decision on written materials, even where the defendants submit

14

affidavits or other information to consider, the plaintiff still only needs to make a *prima facie* case for personal jurisdiction, these failures are fatal. *Id.*

It is clear that, here, distance and the cost of local counsel is not sufficient to overcome the interests of the forum state of Illinois and Plaintiff's interest in obtaining relief. *See Felland*, 682 F.3d at 677 ("out-of-state defendants *always* face such a burden") (emphasis in original). "Moreover, Illinois—like all states—has an interest in providing a forum for its residents to seek redress for torts inflicted by out-of-state actors and injuries suffered within the state." *Jackson v. N'Genuity Enterprises, Co.*, 2014 WL 4269448, at *6 (N.D. Ill. Aug. 28, 2014).

The Seattle Defendants were integral to an investigation and trial that led to Plaintiff's wrongful conviction and incarceration. Plaintiff has lost years of his life that he can never get back. Additionally, in regards to the second factor, there is no other state where this action would be better presented: the Ridulph kidnapping and homicide took place in Illinois, the Seattle Defendants conspired with other Defendants from Illinois, the Seattle Defendants repeatedly travelled to Illinois, and Plaintiff was tried and incarcerated in Illinois. Given the fact that Illinois is the best forum, as demonstrated above, this Court's exercise of personal jurisdiction over them does not offend fair play and substantial justice.

## Conclusion

For the foregoing reasons, Defendants Lau, Steiger, and Ciesynski's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) should be denied.

Respectfully submitted,

**JACK D. MCCULLOUGH**

By: <u>/s/ Aisha N. Davis</u>
*One of Plaintiff's attorneys*

Arthur Loevy
Jon Loevy
Russell Ainsworth
David B. Owens
Aisha N. Davis
LOEVY & LOEVY
311 N. Aberdeen Street, 3rd Floor
Chicago, Illinois 60607
(312) 243-5900
(312) 243-5902 (Fax)

**CERTIFICATE OF SERVICE**

I, Aisha N. Davis, an attorney, hereby certify that on November 6, 2017, I caused to be served a copy of the foregoing Plaintiff's Response to Seattle Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P 12(b)(2) to be served on all counsel of record via CM/ECF electronic filing.

/s/ Aisha N. Davis