**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

JACK D. McCULLOUGH,  )
　　　　　　　　　　　 )
　　　　　　Plaintiff,  )
　　　　　　　　　　　 )
　　　　v.　　　　　　 )　　Case No. 3:17 cv 50116
　　　　　　　　　　　 )
ILLINOIS STATE POLICE AGENT  )　　Judge Frederick J. Kapala
BRION HANLEY, et al.,  )
　　　　　　　　　　　 )　　Magistrate Judge Iain D. Johnston
　　　　　　Defendants.  )
　　　　　　　　　　　 )

## <u>SEATTLE DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)</u>

Ghazal Sharifi
Seattle City Attorney's Office, Civil Division
701 Fifth Avenue, Suite 2050
Seattle, WA 98104-7097
Phone: 206-233-2158
ghazal.sharifi@seattle.gov
*Attorneys for Defendants City of Seattle,
Irene Lau,
Cloyd Steiger, and Michael Ciesynski*

Daniel M. Noland
Paul A. Michalik
Dykema Gossett PLLC
10 South Wacker Drive, Suite 2300
Chicago, IL 60606
Phone: 312-876-1700
*Attorneys for Defendants City of Seattle,
Irene Lau,
Cloyd Steiger, and Michael Ciesynski*

James G. Sotos
Elizabeth A. Ekl
The Sotos Law Firm
550 East Devon Avenue, Suite 150
Itasca, IL 60143
Phone: 630-735-3300
jsotos@jsotoslaw.com
eekl@jsotoslaw.com
*Attorneys for Defendant Irene Lau*

# TABLE OF CONTENTS

ARGUMENT ..................................................................................................................... 1

I.    **The Deficiencies in Plaintiff's Group Pleading and Conclusory allegations against Detectives Ciesynski, Steiger, and Lau Require Dismissal of Plaintiff's Amended Complaint Against the Seattle Defendants.**........................................................................ 1

   A. Mike Ciesynski ........................................................................................................ 1

   B. Cloyd Steiger ........................................................................................................... 3

   C. Irene Lau .................................................................................................................. 6

II.   **Plaintiff Fails to State A Due Process Claim.**................................................................. 6

   A. Plaintiff's *Brady*-based Due Process Claim Fails Because Plaintiff was Aware of the Evidence at Issue........................................................................................................ 6

   B. The Claims Based on the Alleged Violation of Plaintiff's Fifth Amendment Rights Should be Dismissed. ................................................................................................. 7

   C. *Newsome* Remains Binding Precedent and Warrants the Dismissal of Plaintiff's Fabrication of Evidence Due Process Claim........................................................................... 8

III.  **Plaintiff's Fourth Amendment Pre-Trial Detention Claim (Count V) and State Law Malicious Prosecution Claim (Count VII) should be Dismissed.**................................... 10

   A. The Seattle Defendants had probable cause........................................................... 10

   B. The Fact There Were Reasonable Grounds to Pursue the Criminal Prosecution Refutes Plaintiff's Allegation That the Criminal Proceedings Were Terminated in a Manner Indicative of Innocence............................................................................................. 12

   C. Plaintiff Has Failed to Allege Any Facts Demonstrating Malice. ........................ 13

   D. Plaintiff's "Federal Malicious Prosecution" Claim is Time-Barred. ................... 14

IV.  **Plaintiff's Claim for Failure to Intervene Lacks the Requisite Factual Specificity.**...... 14

V.   **Plaintiff's Claims for Civil Conspiracy Fail to Meet the High Standard of Plausibility Necessary to Demonstrate a "Vast, Encompassing Conspiracy."**.................................. 16

VI.  **Plaintiff's Intentional Infliction of Emotional Distress ("IIED") Claim is Time-Barred.** ....................................................................................................................................... 16

VII. **Plaintiff's State Law Claims Are Subject to Dismissal Because He Failed to Comply with Washington Procedural Rules.**................................................................................ 19

VIII. **The Court Can Take Judicial Notice of Seattle Defendants' Attachments.** ................ 20

# TABLE OF AUTHORITIES

Cases

*Brooks v. Walls*, 279 F.3d 518, 522 (7th Cir. 2002) ........................................................ 9

*188 LLC v. Trinity Industries, Inc.,* 300 F.3d 730, 735 (7th Cir. 2002)............................. 20

*Wallace v. City of Chicago*, 440 F.3d 421 (7th Cir. 2006), ............................................... 14

*Ennenga v. Starns*, 677 F.3d 766, 773-74 (7th Cir. 2012) ............................................... 21

*Alexander v. U.S.*, 721 F. 3d 418, 423-24 (7th Cir. 2013) ................................................ 13

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937 (2009) ............................................... 2, 11

*Avery v. City of Milwaukee*, 847 F.3d 433, 441 (7th Cir. 2017) .................................... 8, 9

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955 (2007) ............................. 2, 11, 15

*Cui v. Elmhurst Police Department*, 2017 WL 680318 .................................................... 1

*Eversole v. Steele*, 59 F.3d 710, 718 (7th Cir. 1995) ......................................................... 5

*Felder v. Casey,* 487 U.S. 131, 151 (1988).................................................................... 19

*Fields v. City of Chicago*, 10 C 1168, 2017 WL 4553411, at *11 (N.D. Ill. Oct. 12, 2017)........ 12

*Hampton v. City of Chicago*, 2017 WL 2985743, *29 (N.D. Ill. 2017) ...................................... 11

*Harris v. Kuba*, 486 F.3d 1010, 1015 (7th Cir. 2007) ................................................... 5, 7

*Henson v., CSC Credit Servs.,* 29 F.3d 280-84 (7th Cir. 1994)..................................... 21

*Hildebrandt v. Ill. Dep't of Natural Resources*, 347 F.3d 1014, 1039 (7th Cir. 2003) ............. 3, 5

*Illinois v. Gates*, 462 U.S. 213, 244 n. 13 (1983) .......................................................... 4

*Iqbal v. Patel*, 780 F.3d 728, 729 (7th Cir. 2015)........................................................... 9

*King v. Snohomish County*, 146 Wash. 2d 420, 47 P.3d 563 (2002) ..................................... 19, 20

*Kruse v. Cook County*, 2007 U.S. Dist. LEXIS 2716, *56-57 (N.D. Ill. 2007)............................. 5

*Leaf v. Shelnutt*, 400 F.3d 1070, 1093 (7th Cir. 2005) ................................................. 15

*Manuel v. City of Joliet*, 137 S. Ct. 911 (2017) .................................................... 9, 10, 14

*McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) ............................... 1, 6

*Newsome v. McCabe,* 256 F.3d 747 (7th Cir. 2001)............................................ 8, 9, 10

*People v. McCullough*, 2015 IL App (2d) 121364, 38 N.E.3rd 1, 27-32 (Ill. App. Ct. 2nd Dist. 2015) .................................................................................................................. 5

*Ray v. City of Chicago*, 629 F.3d 660, 664 (7th Cir. 2011) ........................................... 10

*Renner v. City of Marysville*, 168 Wash. 2d 540, 545 (2010)...................................... 19

*Reyes v. City of Renton*, 121 Wash. App. 498, 502 (2004)........................................... 19

*Rodgers v. Peoples Gas*, 315 Ill.App.3d 340, 733 N.E.2d 835, 842 (1st Dist. 2000) ................. 13

*Rodriguez v. Cook County*, 664 F.3d 627, 630-31 (7th Cir. 2011)................................. 12

*Sornberger v. City of Knoxville*, 434 F.3d 1006, 1029 (7th Cir. 2006) ........................................... 7

*Swick v. Liautaud*, 169 Ill.2d 504, 513 (1996) ........................................................................ 12

*Troutman v. Knight*, 2016 WL 7013886, \*3 (S.D. Ind. 2016) ..................................................... 7

*Turner v. City of Chicago*, 91 Ill.App.3d 931, 937, 415 N.E.2d 481 (1st Dist. 1980) ................. 13

*U.S. v. Williams*, 627 F.3d 247, 252-53 (7th Cir. 2010) ............................................................ 3

*Walker v. White*, 2017 WL 2653078, \*5 (N.D. Ill. 2017) ........................................................ 12

*Bridewell v. Eberle*, 730 F.3d 672 (7th Cir. 2013) .......................................................... 16, 17

*Cooney v. Rossiter*, 583 F.3d 967, 971 (7th Cir. 2009) ........................................................ 16

*Evans v. City of Chicago*, 434 F.3d 916, 935 (7th Cir. 2006) ................................................. 16, 17

*Hill v. Tangherlini*, 724 F.3d 965 (7th Cir. 2013) ............................................................... 17

*Lieberman v. Liberty Healthcare Corp.*, 408 Ill. App. 3d 1102, 1104 (4th Dist. 2011) .......... 17, 18

*Phillips v. City of Chicago*, 14 C 9372, 2015 WL 5675529, at \*7 (N.D. Ill. Sept. 24, 2015) ...... 17

*Wallace v. Kato*, 549 U.S. 384, 393 (2007) ................................................................... 18

Rules

Ill. Sup. Ct. Rule 413(d)(iii) .................................................................................... 5

Fed. R. Civ. P. 12(b)(2) .......................................................................................... 19

Defendants, City of Seattle, Irene Lau, Cloyd Steiger, and Michael Ciesynski ("Seattle Defendants"), for their reply in Support of Their Rule 12(b)(6) Motion to Dismiss Plaintiff's amended complaint ("Amended Complaint"), state:

## ARGUMENT

I. **The Deficiencies in Plaintiff's Group Pleading and Conclusory Allegations Against Detectives Ciesynski, Steiger, and Lau Require Dismissal of Plaintiff's Amended Complaint Against the Seattle Defendants.**

A. **Mike Ciesynski**

Ciesynski should be dismissed. Rather than demonstrating a cause of action, the paragraphs of the Amended Complaint cited in Plaintiff's Response (Dkt. 105) only highlight the deficiencies in his claim against Ciesynski. (Response at 6, citing ¶¶121-22, 128, 130-34, 139, 151). Other than conclusory labels that Ciesynski entered into an agreement with other defendants to violate Plaintiff's rights, there is not a single allegation of any specific act of misconduct attributed to Ciesynski. *Id*.

The law is clear that "[l]egal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to [a] presumption of truth. After excising the allegations not entitled to the presumption, [the Court must] determine whether the remaining factual allegations 'plausibly suggest an entitlement to relief.'" *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011); *Cui v. Elmhurst Police Department*, 2017 WL 680318, *3 (N.D. Ill. 2017)(applying *McCauley* and dismissing complaint which only alleged conclusions like "knowingly filed a false report" against one of the defendants).

Citing paragraph 151 of the Amended Complaint, Plaintiff asserts "During the trial, each of the Seattle Defendants repeated their false statements to convict Plaintiff." (Response at 3). However, paragraph 151 makes no allegation that Ciesynski (or Steiger) testified falsely at trial. *Id*. Nor could Plaintiff make such an allegation in good faith based on his own testimony at the

hearing on his petition for certificate of innocence, as explained in the Seattle Defendants' Reply in support of their Rule 12(b)(2) motion to dismiss. (Dkt. 103 at 6). The allegation would still be insufficient even if the Court considers the improper "group pleading" in Plaintiff's Response to supplement the Amended Complaint by adding an allegation that Ciesynski (or Steiger) testified falsely because Plaintiff does not identify a specific false thing Ciesynski actually said at trial.

In a carefully worded attempt to imply Ciesynski was somehow involved in an act of misconduct, Plaintiff argues "Defendant Ciesynski *approved and condoned* the false affidavit that directly led to Plaintiff's arrest and the false charges against him." (Response at 6; emphasis supplied). While the allegation that Steiger submitted a false affidavit does not support any claim against Steiger as discussed below, it clearly has no application to Ciesynski under the Supreme Court's pleading standards. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955 (2007). Specifically, the allegation Plaintiff refers to (¶127) states that "Defendant Steiger, with knowledge and approval of Defendants Ciesynski, Hanley, and Damasky, included false information in that affidavit in an attempt to make it appear that probable cause to arrest Plaintiff existed, where it did not." Notably absent from Plaintiff's allegations are any assertions that Ciesynski signed the affidavit, edited the affidavit, or otherwise had any specific involvement with the allegedly false statements in the affidavit (or anything else in the affidavit for that matter). "Approved and condoned" are mere conclusions and do not support any plausible, cognizable claim. *See McCauley, supra*. Once again misstating his own Amended Complaint, Plaintiff incorrectly asserts he has alleged Ciesynski "was directly involved in crafting the affidavit…" (Response at 7). In reality, Plaintiff makes no such allegation anywhere in his Amended Complaint.

There is no specific act of misconduct asserted against Ciesynski in the Amended Complaint. Since labels and conclusions like "agreed," "condoned," and "conspired" do not establish a plausible claim for relief, Defendant Ciesynski should be dismissed. *See Hildebrandt v. Ill. Dep't of Natural Resources*, 347 F.3d 1014, 1039 (7th Cir. 2003).

**B.     Cloyd Steiger**

Plaintiff cannot credibly rely on allegations of earlier police misconduct to sustain a claim against Defendant Steiger. Rather, the collective knowledge doctrine allows police officers to arrest a suspect at the direction of another officer "even if the officer himself does not have firsthand knowledge of facts that amount to the necessary level of suspicion to permit the given action." *U.S. v. Williams*, 627 F.3d 247, 252-53 (7th Cir. 2010).

The allegations against Steiger focus on the probable cause affidavit. Plaintiff states: "Defendant Steiger authored … a false affidavit for Plaintiff's arrest, including: the fabricated timeline that eviscerated Plaintiff's alibi; false statements that Jan Edwards contradicted his alibi; and fabrications to make Sigman's identification appear credible." (Response at 5). However, as explained in the Seattle Defendants' Motion to Dismiss ("Motion"), the Amended Complaint demonstrates Steiger (like Ciesynski and Lau) was not involved in the investigation at the time when Kathy Sigman identified Plaintiff in a photo array, when Sigman gave a description of the offender, or when other defendants interviewed Jan Edwards. (Motion at 6-7) The Amended Complaint acknowledges those activities occurred several months before the Seattle Defendants were ever contacted regarding this case. Plaintiff previously admitted as much in a 2015 criminal court pleading: rather than contend Steiger lied in the affidavit as he now claims, Plaintiff admitted then that Steiger "had no personal knowledge of these matters, so his sworn belief than the affidavit was true was based solely on what he considered reliable hearsay from the Illinois State Police and the then DeKalb County State's Attorney, Clay Campbell." (See Exhibit D to Motion, at 3).

Steiger agrees, and accordingly moves for dismissal. The collective knowledge doctrine applies to Steiger's affidavit in this case pursuant to the plain reading of the factual allegations of Plaintiff's Amended Complaint (rather than its labels and conclusions), and is further supported by the 2015 admission made by Plaintiff during his criminal case. *Id.*

The last aspect of Plaintiff's claim against Steiger regarding the probable cause affidavit relates to "the fabricated timeline that eviscerated Plaintiff's alibi." (Response at 5). However, the allegations of the Amended Complaint acknowledge the decision already had been made "to manipulate the evidence in an attempt to falsely suggest that Plaintiff had the opportunity to commit the crime" before the Seattle Defendants were contacted in this case. (¶106). Plaintiff is very clear in his Amended Complaint that prior to the Seattle Defendants' involvement, other law enforcement officers "knew that the only way they could charge Plaintiff was if the time of the abduction was fabricated to make it earlier," that other officers "falsely maintained throughout the investigation that the crime occurred between 6 and 6:15 p.m.," and that other officers "created a false timeline to attempt to support the false idea that Plaintiff had enough time to commit the crime and then traveled to Rockford in time to meet with the Air Force officials and place the collect call to his parents." (¶108-110). Only after that timeline was created does Plaintiff allege the Seattle Defendants were contacted to assist in the investigation. (¶121-138). Pursuant to the collective knowledge doctrine, Steiger was legally entitled to rely upon the analysis of the timeline conducted by other law enforcement officers prior to his involvement.

Plaintiff incorrectly suggests the Motion is "frivolous" to contend he has not stated a claim under the false timeline theory against Steiger due to the absence of any allegation when and if Steiger had or read the FBI file. Plaintiff is mistaken. *See Illinois v. Gates*, 462 U.S. 213, 244 n. 13 (1983) ("Probable cause is only a probability or substantial chance of criminal activity, not a

certainty that a crime was committed").  The Amended Complaint is devoid of any specific facts that would plausibly establish Steiger was involved in the investigation to such a degree that he would have reason to reject the timeline established by the Illinois police officers who were previously investigating the case (presuming he was given the FBI file).  (¶¶ 106-110).  Moreover, there is no allegation the allegedly false timeline was introduced at trial, nor is a timeline evidence in and of itself.  The allegedly false timeline created before Steiger became involved in the investigation cannot be a basis to impose liability against him.

Furthermore, the police do not have an obligation to establish a criminal defendant's alibi in a probable cause affidavit. *See Kruse v. Cook County*, 2007 U.S. Dist. LEXIS 2716, *56-57 (N.D. Ill. 2007) (no Fourth Amendment duty to investigate alibi once probable cause existed), *Eversole v. Steele*, 59 F.3d 710, 718 (7th Cir. 1995) (once a police officer has established probable cause, the officer has "no constitutional obligation to conduct any further investigation in the hopes of uncovering potentially exculpatory evidence").  An alibi is a defense a criminal defendant must assert and establish at trial.  Ill. Sup. Ct. Rule 413(d)(iii). Plaintiff had the opportunity to testify at trial to his alibi (which he was aware of), and it was up to the trial court to decide whether to admit into evidence the FBI file (which Plaintiff undisputedly possessed).  *See Harris v. Kuba*, 486 F.3d 1010, 1015 (7th Cir. 2007) (Plaintiff's own alibi was not concealed from him under *Brady*).[1] Accordingly, there is no viable cause of action Plaintiff can assert against Steiger based on the statement in his affidavit that Maria disappeared at about 6:15 p.m.  Since the allegations against Steiger consist of conclusory group pleading assertions insufficient to support a cause of action, Steiger should be dismissed from this case.  *See Hildebrandt*, 347 F.3d at 1039

---

[1] The Illinois Appellate Court upheld the Circuit Court's order barring materials from the FBI file as hearsay, and Plaintiff chose not to testify or offer any alibi at his trial.  *People v. McCullough*, 2015 IL App (2d) 121364, 38 N.E.3rd 1, 27-32 (Ill. App. Ct. 2nd Dist. 2015).

### C. Irene Lau

As against Lau, Plaintiff asserts she fabricated an account of his interrogation to make it appear as if he made inculpatory statements when he did not. (Response at 5). Additionally, Plaintiff alleges that Lau "hid the video of her interrogation, which prevented Plaintiff from impeaching her false testimony at trial." *Id*. For the reasons stated below and in the Seattle Defendants' motion to dismiss, Plaintiff's allegations against Lau do not support any cause of action. As with Defendants Steiger and Ciesynski, the balance of Plaintiff's allegations are non-specific conclusory assertions of agreements to frame and conspiracy. Lau should be dismissed. *McCauley*, 671 F.3d at 616.

## II. Plaintiff Fails to State A Due Process Claim.

### A. Plaintiff's *Brady*-based Due Process Claim Fails Because Plaintiff was Aware of the Evidence at Issue.

Plaintiff argues that his due process claim against Defendant Lau is based on the alleged withholding of an interrogation video demonstrating Defendant Lau's police report and trial testimony were false.[2] (Response at 7-8). He alleges Defendant Lau falsely claimed that Plaintiff "described [Maria Ridulph] as being very stunningly beautiful with big brown eyes and stated she was, 'lovely, lovely, lovely'" (¶145); however, "the video of the interrogation bears out that it was Defendant Lau who called Maria beautiful, not [Plaintiff]" and Plaintiff "simply agreed with Lau that Maria was adorable with big brown eyes" (¶146). He also alleges "Defendant Lau suggested that [Plaintiff's] (fabricated) statements were even more incriminating because of his demeanor when he made them" yet "[t]he video demonstrates there was no significant change in [Plaintiff's]

---

[2] Plaintiff's Response alleges only that Defendant Lau withheld the video (Dkt. 105, at pp. 8-9 ("Lau withheld that video"; "Plaintiff could not present the video because Defendant Lau actively withheld it"; "she withheld the video of the interrogation itself")) and makes no argument that Defendants Steiger and/or Ciesynski withheld any evidence in violation of *Brady v. Maryland*.

volume, posture, or demeanor when he mentioned Maria, nor was there any indication that [Plaintiff] was angry or enraged during the interview." (¶147). These allegations, even if true, are insufficient to set forth a *Brady* claim because Plaintiff was aware of his own statements and demeanor during the polygraph interview and could have used that knowledge to challenge Defendant's Lau's testimony at trial. *Sornberger v. City of Knoxville*, 434 F.3d 1006, 1029 (7th Cir. 2006); *Harris v. Kuba*, 486 F.3d 1010, 1017 (7th Cir. 2007).

Plaintiff's attempt to distinguish *Sornberger* and *Harris* is confusing and unavailing. *See Troutman v. Knight*, 2016 WL 7013886, *3 (S.D. Ind. 2016) Plaintiff argues the cases are distinguishable because he is not alleging Lau withheld information about the circumstances of his interrogation, but that she withheld the video of the interrogation itself. (Response at 9). However, the video has no value independent of the circumstances of the interrogation. (No *Brady* violation for the withholding of the plaintiff's exculpatory statement because "Mr. Troutman knew he told investigators that he was in the cell attempting to stop the assault"). Additionally, Plaintiff has not cited any cases supporting a *Brady* violation for failure to turn over a videotaped statement where the facts and circumstances of the criminal defendant's interrogation were otherwise known to him.

    **B.**    **The Claims Based on the Alleged Violation of Plaintiff's Fifth Amendment Rights Should be Dismissed.**

The Seattle Defendants moved to dismiss Plaintiff's claims based on the alleged violation of his Fifth Amendment rights due to the lack of appropriate Miranda warnings. (Motion at 11). Plaintiff's Response (at 7, n.1) concedes he is "no longer pursuing his Miranda claim." Plaintiff's claims based on the alleged violation of his Fifth Amendment rights should be dismissed.

**C. *Newsome* Remains Binding Precedent and Warrants the Dismissal of Plaintiff's Fabrication of Evidence Due Process Claim.**

Over a decade and a half ago, the Seventh Circuit determined that in Illinois, the remedy for a prosecution based on, and a conviction obtained through the use of, fabricated evidence is a state law malicious prosecution claim and not a claim under Section 1983. *Newsome v. McCabe,* 256 F.3d 747 (7th Cir. 2001). Mr. Newsome, like Plaintiff here, alleged that police had "framed" him for a murder of which he was convicted. *Id.* And he too, like Plaintiff, spent time in prison prior to his exoneration. *Id.* In short, Newsome tried to bring the exact same due process claim Plaintiff attempts here, and the Seventh Circuit rejected the claim.[3]

In response, Plaintiff argues *Newsome* is no longer good law. According to Plaintiff, there "can no longer be any question that a conviction based on fabricated evidence violates due process." (Response at 10). To support his argument, Plaintiff relies on *Avery v. City of Milwaukee*, 847 F.3d 433, 441 (7th Cir. 2017), which held that the existence of a state law malicious prosecution remedy did not foreclose a fabrication of evidence claim under Section 1983 where a plaintiff was wrongfully convicted based on the allegedly fabricated evidence.

To reach that conclusion, the *Avery* panel first acknowledged the district court's reasoning in dismissing the fabrication claim (that "an evidence-fabrication claim 'sounds' in malicious prosecution and therefore Avery's due-process claims were 'knocked out' by Wisconsin's common-law remedy for that tort") "traces" to *Newsome*, which "construed *Albright* as rejecting a constitutional claim of malicious prosecution where state law provides a meaningful remedy for that tort." *Id.* at 440. The panel then implied that the district had misunderstood *Newsome* and that *Newsome* must be read in the context of *Albright*'s facts; the plaintiff in *Albright* had not gone

---

[3] While *Newsome* called his claim a "federal malicious prosecution" claim, the essence of the claim was what this Plaintiff is calling a "fabrication of evidence" claim.

to trial and had not been wrongfully convicted.  *Id.*  But Mr. Newsome *did* go to trial and later claimed he was wrongfully convicted based on fabricated evidence (indeed, Newsome, like Plaintiff, alleged he was intentionally "framed" for the crime of which he was convicted) and he went to prison for fifteen years.  Yet, the *Newsome* court rejected his attempted due process claim.  Thus, what the *Avery* panel must have meant was not that the district court misunderstood *Newsome*; it was that *Newsome* misunderstood *Albright*.  And in saying so, the *Avery* panel implicitly overruled *Newsome*.  *Id.* at 441, n 4.

The specific issue in *Newsome* to which *Albright* was applied was whether Section 1983 provides a remedy to a wrongfully convicted plaintiff for a due process claim based on the fabrication of evidence.  *Newsome* says it does not, at least not in Illinois where state law provides an adequate remedy.  *Avery* says it does, even where state law provides an adequate remedy.  The two holdings simply cannot be reconciled.

*Newsome* is the binding authority here.  "One panel of this court cannot overrule another implicitly. Overruling requires recognition of the decision to be undone *and* circulation to the full court under Circuit Rule 40(e)."  *Brooks v. Walls*, 279 F.3d 518, 522 (7th Cir. 2002) (emphasis added); *see also Iqbal v. Patel*, 780 F.3d 728, 729 (7th Cir. 2015) ("That's not how precedent works. In this circuit it takes a circulation to the full court under Circuit Rule 40(e) for one panel to overrule another.").  Unless and until a full court determines that *Newsome*'s application of *Albright* in a wrongful conviction case to a claim based on fabricated evidence was incorrect, this Court is bound by *Newsome* and should reject the fabrication claim attempted here.

Plaintiff's Response does not address the Seventh Circuit's failure to overrule *Newsome* pursuant to Circuit Rule 40(e).  Instead, Plaintiff pivots and argues *Manuel v. City of Joliet*, 137

S. Ct. 911 (2017), opens the door to federal malicious prosecution claims in the Seventh Circuit.[4] As Plaintiff's Response identifies, the Supreme Court in *Manuel* held the Fourth Amendment "governs claims for unlawful detention beyond the start of legal process 'when legal process itself goes wrong.'" (Response at 10, citing *Manuel*, 137 S. Ct. at 919-20). But Plaintiff's fabrication of evidence claims are premised upon the Due Process Clause, not the Fourth Amendment. (*See, e.g.*, Am. Compl., at ¶217). Plaintiff's attempt to rely on *Manuel* to save his due process fabrication of evidence claims is therefore misplaced and unpersuasive.

Plaintiff's suggestion that *Manuel* "abrogates" *Newsome* (Response at 10) is incorrect. *Manuel* stands only for the proposition that a Fourth Amendment claim for detention without probable cause may survive even after legal process has begun. 137 S. Ct. at 919-20. The Seventh Circuit recognized Mr. Newsome would have had a Fourth Amendment claim, but the applicable statute of limitations had long expired before Newsome filed suit. *Newsome*, 256 F.3d at 750 ("Newsome had a potential fourth amendment claim, but as we mentioned at the outset the time to pursue it expired almost 20 years ago"). In other words, the Seventh Circuit acknowledged Newsome's potential Fourth Amendment claim but found it unavailable because it would have been untimely. *Id*. at 751-52. *Newsome* is not at odds with *Manuel*, and remains binding precedent. Therefore, Plaintiff's fabrication of evidence claims should be dismissed.

## III. Plaintiff's Fourth Amendment Pre-Trial Detention Claim (Count V) and State Law Malicious Prosecution Claim (Count VII) should be Dismissed.

### A. The Seattle Defendants had probable cause.

As explained in detail in Section I of this Reply, Plaintiff's failure to address his pleading deficiencies to establish how or why the Seattle Defendants knew he was innocent or were trying

---

[4] Plaintiff misstates Seventh Circuit case law. Malicious prosecution claims are not actionable for an Illinois plaintiff under §1983 because Illinois state law provides a tort claim for malicious prosecution. *Ray v. City of Chicago*, 629 F.3d 660, 664 (7th Cir. 2011).

to frame him is fatal to his claim that they lacked probable cause. Based on the actual factual allegations of his Amended Complaint, as detailed in the Motion, the Seattle Defendants clearly had probable cause because his mother made an incriminating statement about Plaintiff's involvement in the crime and because Plaintiff was identified in a photo array by the only witness to Maria's abduction. (Motion at 13).

In response, Plaintiff admits the applicability of the collective knowledge doctrine where the defendant officer's reliance on "information obtained from another officer [was] 'objectively reasonable' and 'in good faith.'" (Response at 12, citing *Hampton v. City of Chicago*, 2017 WL 2985743, *29 (N.D. Ill. 2017). Plaintiff nevertheless argues the doctrine does not apply here because the Seattle Defendants allegedly "1) knew that Plaintiff was innocent and 2) knew the other Defendants were, like themselves, trying to frame Plaintiff for murder." *Id*. However, Plaintiff fails to address the fundamental point that his "Amended Complaint is silent as to how Seattle Defendants would have had any knowledge about the alleged infirmities in either piece of evidence." (Motion at 13).

Plaintiff's continued reliance on conclusions such as the Seattle Defendants "knew he was innocent" and "knew" other defendants were trying to frame him does not establish a plausible claim for relief and fails to satisfy even the most basic pleading requirements under *Iqbal* and *Twombly*. There is absolutely nothing in the Amended Complaint suggesting how or why the Seattle Defendants knew these two pieces of evidence establishing probable cause were unreliable. Nor does Plaintiff make any effort to explain in his Response how or why the Seattle Defendants knew these two pieces of evidence were unreliable. Because Plaintiff's pleading demonstrates the Seattle Defendants had probable cause to arrest Plaintiff, his Fourth Amendment pretrial detention claim (Count V) and his state law malicious prosecution claim (Count VII), should be dismissed.

### B. The Fact There Were Reasonable Grounds to Pursue the Criminal Prosecution Refutes Plaintiff's Allegation That the Criminal Proceedings Were Terminated in a Manner Indicative of Innocence.

Plaintiff misconstrues the Seattle Defendants' argument that he cannot meet the element of a malicious prosecution claim that the criminal proceedings were terminated in a manner indicative of innocence. (Response at 13). Very simply, the Seattle Defendants contend the Amended Complaint establishes there were reasonable grounds to pursue the criminal prosecution as a result of Plaintiff's mother's incriminating statement as to his guilt and the eyewitness identification. (Motion at 19, adopting Section II(D) of the Motion addressing probable cause).

Under *Swick v. Liautaud*, 169 Ill.2d 504, 513 (1996), to meet the indicative of innocence element, the "circumstances surrounding the abandonment of the criminal proceedings must compel an inference that there existed a lack of reasonable grounds to pursue the criminal prosecution." *Id*. Plaintiff does not explain why this holding from *Swick* is inapplicable to the allegations of his Amended Complaint. Instead, Plaintiff focuses on his irrelevant certificate of innocence, which the Seventh Circuit has indicated is separate from the reasons behind the abandonment of a defendant's criminal proceedings. *See Rodriguez v. Cook County*, 664 F.3d 627, 630-31 (7th Cir. 2011) (Holding that the certificate of innocence statute "does not affect claims against any person or entity other than the State of Illinois," does not create a new cause of action, and has no effect on the accrual date for malicious prosecution claims). To the extent the District Court's decision in *Walker v. White*, 2017 WL 2653078, *5 (N.D. Ill. 2017) is inconsistent with *Rodriguez*, the Seattle Defendants submit the Seventh Circuit's rationale in *Rodriguez* should be followed. Moreover, another district court recently held that that the denial of a petition for certificate of innocence was inadmissible in a civil trial, so it appears there is no consensus on the issue in the Northern District. *See Fields v. City of Chicago*, 10 C 1168, 2017 WL 4553411, at *11 (N.D. Ill. Oct. 12, 2017). Ultimately, Plaintiff's discussion about the certificate of innocence

is irrelevant because under *Swick*, the fact there were reasonable grounds to pursue the criminal proceedings is fatal to the "indicative of innocence" element of Plaintiff's malicious prosecution claim.

### C. Plaintiff Has Failed to Allege Any Facts Demonstrating Malice.

Plaintiff's malicious prosecution claim is further subject to dismissal because he failed to plead any facts supporting the element of malice. (Motion at 19). Plaintiff does not dispute this point, but argues that he need not allege facts supporting malice so long as he "has alleged that Defendants acted without probable cause to frame him." (Response at 14). Plaintiff's argument should be rejected because there was probable cause to arrest Plaintiff (as set forth above), and because malice requires more than just the absence of probable cause under Illinois law.

A defendant commences a criminal proceeding with malice if the defendant commences the proceeding with an improper motive, or a reason other than to bring to justice the person against whom the criminal proceeding is commenced. *Turner v. City of Chicago*, 91 Ill.App.3d 931, 937, 415 N.E.2d 481 (1st Dist. 1980). Malice may only be inferred from the absence of probable cause if the circumstances are inconsistent with good faith and where the absence of probable cause has been clearly proved. *Id.* The primary case cited by Plaintiff in support of his assertion that the absence of probable cause can establish malice in and of itself arose under Indiana law, which is inapplicable here. (Response at 14, *citing Alexander v. U.S.*, 721 F. 3d 418, 423-24 (7th Cir. 2013)). The Illinois case cited by Plaintiff, *Rodgers v. Peoples Gas*, 315 Ill.App.3d 340, 733 N.E.2d 835, 842 (1st Dist. 2000), is in accord with *Turner*, not *Alexander*. Accordingly, Plaintiff's malicious prosecution claim also fails because he has not pled any facts establishing the Seattle Defendants commenced the proceeding with an improper motive or a reason other than to bring Plaintiff to justice. Count VII should be dismissed for this reason as well.

**D. Plaintiff's "Federal Malicious Prosecution" Claim is Time-Barred.**

Plaintiff claims the Supreme Court's decision in *Manuel v. City of Joliet* "created[ed] a new path for the Seventh Circuit to permit federal malicious prosecution claims." (Response at 15). However, as discussed by Justice Alito in dissent, the majority ignored the question of whether a claim of malicious prosecution may be brought under the Fourth Amendment. *Manuel*, 137 S. Ct. at 923. Rather, the majority focused its analysis on "whether Manuel may bring a claim based on the Fourth Amendment to contest the legality of his *pretrial* confinement." *Id*. at 914 (emphasis added). The Supreme Court found, "Manuel stated a Fourth Amendment claim when he sought relief not merely for his (pre-legal process) arrest but also for his (post-legal process) pretrial detention." *Id*. at 919. However, the Court left the contours of such a claim, including accrual, to be determined by the Seventh Circuit. *Id.* at 920-922.

To date, the Seventh Circuit has not allowed federal malicious prosecution claims in this circuit and, as a result, its decision in *Wallace v. City of Chicago* remains the law concerning the accrual of Fourth Amendment claims. 440 F.3d 421 (7th Cir. 2006), *aff'd*, 549 U.S. 384, 397 (2007) ("A § 1983 claim seeking damages for a false arrest in violation of the Fourth Amendment, where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained pursuant to legal process."). Plaintiff alleges he was arrested for the murder of Maria Ridulph in June of 2011 and was convicted of her murder following his 2012 trial. (Dkt. 84, ¶¶ 30, 47.) Even assuming Plaintiff's Fourth Amendment claim did not accrue until his period of pretrial confinement concluded, his claim accrued in 2012 and is, therefore, untimely and should be dismissed.

**IV. Plaintiff's Claim for Failure to Intervene Lacks the Requisite Factual Specificity.**

As set forth in the Seattle Defendants' Motion (at 15), the Amended Complaint does not provide sufficient facts setting forth the specific unconstitutional conduct in which they allegedly

failed to intervene, how they failed to intervene, or how they knew of another defendant's allegedly unconstitutional misconduct and intentionally chose not to do anything about it. Plaintiff's Response cannot provide these facts because they are missing from the Amended Complaint. Instead, Plaintiff must again resort to relying on conclusory assertions, such as the Seattle Defendants met with others, "plotted" to frame Plaintiff, and "collaborated" to falsely accuse Plaintiff. (*See* Response at 18). Plaintiff identifies no facts that support these conclusions, a hallmark of his Response. And as set forth in the Motion (at 15), there are no factual allegations to plausibly establish any of the Seattle Defendants "had a realistic opportunity to prevent" another defendant from inflicting a constitutional harm and failed to do so. *Leaf v. Shelnutt*, 400 F.3d 1070, 1093 (7th Cir. 2005).

As an alternative basis for relief, the Seattle Defendants request dismissal of any derivative failure to intervene claim to the extent the Court finds the underlying constitutional claims to be deficient. In other words, if the Court were to dismiss Plaintiff's *Brady*-based due process claim, any derivative claim for failure to intervene in the alleged *Brady* violation would likewise be subject to dismissal. *Harper v. Albert*, 400 F.3d 1052, 1064 (7th Cir. 2005). But Plaintiff disagrees with this seemingly straightforward proposition, apparently contending it is enough to simply allege failure to intervene as a "catch-all" without tying it a specific constitutional violation. (Response at 18). Plaintiff's Response thus betrays the inherent vagueness of his failure to intervene claim. In short, Plaintiff's Response (like the Amended Complaint) contains nothing more than broad generalizations and conclusory assertions regarding the failure to intervene claim. Count III is impermissibly conclusory and insufficient under federal pleadings standards and should be dismissed. *Twombly*, 550 U.S. at 555 (a complaint must contain more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action").

## V. Plaintiff's Claims for Civil Conspiracy Fail to Meet the High Standard of Plausibility Necessary to Demonstrate a "Vast, Encompassing Conspiracy."

The Seattle Defendants seek dismissal of Plaintiff's §1983 and state law conspiracy claims because the Amended Complaint has fallen well short of meeting the federal pleading standards required to plausibly allege a conspiracy. Plaintiff's Response serves only to highlight the insufficiency of his allegations and fails to identify the requisite facts from his pleading that would support a conspiracy claim (again, because they are absent). The Response (at 19) initially asserts the conclusion that the Seattle Defendants "agreed with Illinois Defendants to target Plaintiff although he was innocent." Rather than provide the specifics of that vaguely alleged "agreement," the Response (at 20) then goes on to simply restate the allegations of misconduct allegedly committed by the Seattle Defendants, concluding with, "During the life of the conspiracy, Defendants met and consulted with the Illinois Defendants numerous times." Plaintiff's citations to his Amended Complaint simply do not support the conclusory assertions of "conspiracy." Where are the factual allegations to establish the existence of a "conspiracy" beyond the assertion that one existed? Allegations of parallel conduct and a bare assertion of conspiracy are insufficient. *Twombly*, 550 U.S. at 556. Conclusory terms such as "agreement," "concerted'" and "scheme" cannot substitute for factual allegations actually demonstrating a conspiracy.

Plaintiff's Response fails to identify allegations that satisfy the "high standard of plausibility" needed to state a claim for civil conspiracy. *Cooney v. Rossiter*, 583 F.3d 967, 971 (7th Cir. 2009). Plaintiff's civil conspiracy claims in Counts VI and IX should be dismissed.

## VI. Plaintiff's Intentional Infliction of Emotional Distress ("IIED") Claim is Time-Barred.

The Seattle Defendants moved to dismiss the IIED claim as untimely pursuant to *Bridewell v. Eberle*, 730 F.3d 672 (7th Cir. 2013). The Seventh Circuit's analysis in *Bridewell* of when an IIED claim accrues was premised on its earlier ruling in *Evans v. City of Chicago*, 434 F.3d 916,

935 (7th Cir. 2006), *overruled on other grounds by Hill v. Tangherlini*, 724 F.3d 965 (7th Cir. 2013), that an IIED claim is not a continuing tort and therefore the claim accrues upon the last injurious act. *Bridewell*, 730 F.3d at 678 ("If Bridewell is right, however, then *Evans* must be wrong. The tort of intentional infliction of emotional distress either is a continuing wrong (as she contends) or is not (as *Evans* held). The idea that failing to reverse the ongoing effects of a tort restarts the period of limitations has no support in Illinois law — or in federal law either."). Plaintiff's argument that his IIED claim did not accrue until after his conviction was vacated (Response at 20) is foreclosed by *Bridewell*.

Plaintiff's Response contains no discussion of *Bridewell*. Instead, Plaintiff reflexively offers the *Heck* doctrine in an attempt to salvage his claim. However, as discussed in a recent case involving an alleged wrongful conviction:

> [The *Bridewell*] court stated a general rule regarding the limitations period for IIED claims, and this is how district courts have consistently interpreted *Bridewell*, even when malicious prosecution and IIED claims are intertwined. *See, e.g., Chatman v. City of Chicago,* 2015 WL 1090965, *9 (N.D. Ill. Mar. 10, 2015); *Taylor,* 80 F.Supp.3d at 828; *Hill v. City of Chicago,* 2014 WL 1978407, *3 (N.D. Ill. May 14, 2014); *Bamberg v. City of Evanston,* 2014 WL 1612710, *4 (N.D. Ill. Apr. 16, 2014). A successful IIED claim would not necessarily have impugned Plaintiffs' convictions, *see Moore,* 771 F.3d at 446 ("[M]isconduct by the police does not (at least, need not) imply the invalidity of any particular conviction."). Accordingly, it appears that Plaintiffs' IIED claim could have been filed (that is, it was not *Heck*-barred) even before their convictions were vacated.

*Phillips v. City of Chicago*, 14 C 9372, 2015 WL 5675529, at *7 (N.D. Ill. Sept. 24, 2015). This rationale provides one of the bases underlying the Seattle Defendants' request for dismissal of the IIED claim here. (Motion, at 20-21).

Plaintiff's reliance on *Lieberman v. Liberty Healthcare Corp.*, 408 Ill. App. 3d 1102, 1104 (4th Dist. 2011), for the proposition that Illinois has unconditionally adopted *Heck* is misplaced. *Lieberman* acknowledged it was addressing an issue of first impression and carefully limited the "application of the *Heck* rule to the facts of this case." *Id.* at 1111-12 ("The adoption of the *Heck*

scheme here avoids the inconsistent effect of awarding money damages for unlawful detention to lawfully confined plaintiffs"). *Id.* But, even if *Lieberman* can be read to have adopted *Heck* generally, the rule does not apply to the IIED claim asserted by Plaintiff. The plaintiffs in *Lieberman* were first injured as a result of the tortious act when their confinement was continued, and they therefore did not have a present and complete cause of action (*i.e.* tortious act plus injury) until their confinement was continued. *Lieberman,* 408 Ill. App. 3d at 1104. In this case, however, Plaintiff's injury coincided with the last tortious acts allegedly committed by the Seattle Defendants — the 2011 arrest and interrogation of Plaintiff (the alleged subsequent perjury is not a tortious act under federal or Illinois state law). At that time, Plaintiff had a present and complete cause of action, and whether there were "ongoing effects" from that act, including a subsequent conviction, does not affect when the claim accrued—not even under *Heck. Wallace v. Kato*, 549 U.S. 384, 393 (2007) ("What petitioner seeks, in other words, is the adoption of a principle that goes well beyond *Heck:* that an action which would impugn *an anticipated future conviction* cannot be brought until that conviction occurs and is set aside. [] We are not disposed to embrace this bizarre extension of *Heck*." (emphasis original)). Accordingly, Plaintiff's IIED claim is time-barred pursuant to *Bridewell* and must be dismissed.

As a final point, Plaintiff's Response does little more than offer labels and conclusions in response to the Seattle Defendants' contention that the allegations underlying the IIED claim are conclusory and insufficient. (Motion, at 20). For example, Plaintiff broadly argues the Seattle Defendants committed acts in furtherance of a conspiracy to commit murder. (Response, at 22). But that generalized and conclusory allegation is asserted against all defendants, not just the Seattle Defendants. Plaintiff's use of "group pleading" is particularly problematic with respect to his IIED claim, which should be dismissed.

**VII.   Plaintiff's State Law Claims Are Subject to Dismissal Because He Failed to Comply with Washington Procedural Rules.**

The Seattle Defendants filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) asserting this Court lacks personal jurisdiction (Dkt. 85), which is currently pending. As set forth therein, Plaintiff failed to allege sufficient facts showing the Seattle Defendants purposefully availed themselves of the benefits and protections of Illinois laws, or that they initiated contacts with Illinois, or created a substantial connection with Illinois. *Id*. at 4-8.  The Seattle Defendants are all Washington citizens, the investigative acts that Plaintiff claims the Seattle Defendants engaged in with Illinois Defendants took place in Washington, and Washington has an interest in adjudicating this dispute over its own citizens. *Id*. at 8-9.

In Washington, "a local government entity is liable for damages arising from its tortious conduct to the same extent as if it were a private person or corporation*." Renner v. City of Marysville*, 168 Wash. 2d 540, 545 (2010) (en banc). However, in accordance with RCW 4.96.010(1), prospective plaintiffs must file a tort claim with the local government at least 60 days prior to filing a lawsuit. *Id*. This notice-of-claim statute is strictly construed and rigorously enforced. Indeed, failure to comply with the filing requirements for a tort action against a local governmental entity in Washington leads to dismissal of the action.[5] *Reyes v. City of Renton*, 121 Wash. App. 498, 502 (2004), as amended, review denied 152 Wash. 2d 1031.

Plaintiff has not followed the procedural notice requirements set forth in RCW 4.96.010. Accordingly, under Washington law, Seattle Defendants are entitled to dismissal of the state law claims. Although Illinois does not provide a similar "notice of claim" provision, in light of the Seattle Defendants' pending 12(b)(2) motion, they raise this defense to avoid any waiver. *King v.*

---

[5] This notice-of-claim statute applies to state-law claims in federal court. *See Felder v. Casey,* 487 U.S. 131, 151 (1988) ("federal courts entertaining state-law claims against ... municipalities are obligated to apply the [state] notice-of-claim provision").

*Snohomish County*, 146 Wash. 2d 420, 47 P.3d 563 (2002) (waiver can occur, even if the defense was included in the answer, if the government engages in discovery, pretrial motions, and other conduct inconsistent with an intent to assert the defense).

## VIII.   The Court Can Take Judicial Notice of Seattle Defendants' Attachments.

The Seattle Defendants' Motion seeks this Court's consideration of four exhibits: video interview of Plaintiff by Defendant Lau (Exhibit A); video interview of Plaintiff by Defendants Steiger and Ciesynski (Exhibit B); Plaintiff's Appellate Brief in his underlying criminal proceeding (Exhibit C); and Plaintiff's Motion to Reconsider Dismissal of his Post-Conviction Petition (Exhibit D). Plaintiff argues this is not one of the "limited circumstance[s]" where the Court may take judicial notice of facts outside of Plaintiff's Complaint. (Response at 23-24). To the contrary, reference to the videos and documents is necessary here to prevent Plaintiff from surviving a motion to dismiss simply because he omitted facts in his Amended Complaint that are not subject to reasonable dispute. *See 188 LLC v. Trinity Industries, Inc.*, 300 F.3d 730, 735 (7th Cir. 2002) ("The purpose of the exception is to prevent parties from surviving a motion to dismiss by artful pleading or by failing to attach relevant documents.").

As an initial matter, Plaintiff is no longer pursuing a Fifth Amendment *Miranda* claim. (*See* Response at 7, fn. 1). Nor can he reasonably do so in light of the incontestable evidence that he was provided *Miranda* warnings before he was questioned (*see* Exs. A and B) and that he had been employed as a City of Milton, Washington police officer and was, therefore, otherwise aware of his rights (Ex. C). Accordingly, Exhibits B and C are moot.

However, the video interview with Defendant Lau (Ex. A) also supplies incontestable evidence relevant to Plaintiff's due process claim – that he was aware his interview with Defendant Lau was being videotaped – and should be considered. (Motion at 8-9). Similarly, in the pleading filed by Plaintiff in his criminal proceedings on October 13, 2015, titled "Motion to Reconsider

the Dismissal of Defendant's Post Conviction Petition," Plaintiff concedes Defendant Steiger, in drafting the affidavit in support of the complaint for a search warrant, "had no personal knowledge of these matters, so his sworn belief that the affidavit was true was based solely on what he considered reliable hearsay from the Illinois State Police and the then DeKalb County State's Attorney, Clay Campbell." (Ex. D, at p. 3). Plaintiff's acknowledgement of these facts, which defeat his unlawful detention claim (*see* Motion, at 12-14), is contained in a public document, not subject to reasonable dispute, and, accordingly, should be considered by this Court.

In *Ennenga v. Starns*, cited by Plaintiff, the court held it may take judicial notice of facts that are (1) not subject to reasonable dispute and (2) either generally known within the territorial jurisdiction or capable of accurate and ready determination through resources whose accuracy cannot be questioned. 677 F.3d 766, 773-74 (7th Cir. 2012) *citing Henson v., CSC Credit Servs.,* 29 F.3d 280-84 (7th Cir. 1994) (finding public court documents judicially noticeable). The information contained in Exhibits A and D satisfies both prongs. Accordingly, this Court should take judicial notice of the exhibits in assessing the Seattle Defendants' Motion.

WHEREFORE, Defendants City of Seattle, Irene Lau, Cloyd Steiger, and Michael Ciesynski request the Court grant their motion, dismiss Plaintiff's Amended Complaint with prejudice, and for any other relief this Court deems appropriate.

Dated: January 10, 2018                    Respectfully submitted,

                                           CITY OF SEATTLE, IRENE LAU,
                                           CLOYD STEIGER, MICHAEL
                                           CIESYNSKI

                              By:   */s/ Daniel M. Noland*

Ghazal Sharifi
Seattle City Attorney's Office, Civil Division
701 Fifth Avenue, Suite 2050
Seattle, WA 98104-7097
Phone: 206-233-2158

ghazal.sharifi@seattle.gov

Daniel M. Noland
Paul A. Michalik
Dykema Gossett PLLC
10 South Wacker Drive, Suite 2300
Chicago, IL 60606
Phone: 312-876-1700
*Attorneys for Defendants City of Seattle, Irene Lau,*
*Cloyd Steiger, and Michael Ciesynski*

James G. Sotos
Elizabeth A. Ekl
The Sotos Law Firm
550 East Devon Avenue, Suite 150
Itasca, IL 60143
Phone: 630-735-3300
jsotos@jsotoslaw.com
eekl@jsotoslaw.com
*Attorneys for Defendant Irene Lau*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on January 10, 2018, I electronically filed the foregoing Seattle Defendants' Reply in Support of Their Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) with the Clerk of the Court using the ECF system, which sent electronic notification of the filing on the same day to all counsel of record.

<table>
<tr><td>

*<u>Attorneys for Plaintiff</u>*
Arthur Loevy
Jon Loevy
Russell Ainsworth
David B. Owens
Aisha N. Davis
Loevy & Loevy
311 N. Aberdeen St., 3rd Floor
Chicago, IL 60607
312-243-5900
jon@loevy.com
russell@loevy.com
david@loevy.com
aisha@loevy.com

</td><td>

*<u>Attorneys for Defendants Clay Campbell, Victor Escarcida, Julie Trevarthen, William Engerman, and County of DeKalb, Illinois</u>*
Terry Ekl
Patrick Provenzale
Nemura G. Pencyla
Tracy L. Stanker
Ekl, Williams & Provenzale LLC
901 Warrenville Rd., #175
Lisle, IL 60532
630-654-0045
tekl@eklwilliams.com
pprovenzale@eklwilliams.com
npencyla@eklwilliams.com
tstanker@eklwilliams.com

</td></tr>
<tr><td>

*<u>Attorneys for Defendants Brion Hanley, Daniel P. Smith, Todd Damasky, Larry Kot</u>*
Michael T. Dierkes
T. Andrew Horvat
Illinois Attorney General's Office
100 W. Randolph St., 13th Floor
Chicago, IL 60601
312-814-3672
mdierkes@atg.state.il.us
thorvat@atg.state.il.us

</td><td>

*<u>Attorneys for Defendants The City of Seattle, Irene Lau, Cloyd Steiger, and Michael Ciesynski</u>*
Ghazal Sharifi
Seattle City Attorney's Office
701 5th Avenue, Suite 2050
Seattle, WA 98104
206-233-2158
ghazal.sharifi@seattle.gov

</td></tr>
<tr><td>

*<u>Attorneys for Defendant Irene Lau</u>*
James G. Sotos
Elizabeth A. Ekl
The Sotos Law Firm
550 East Devon Avenue, Suite 150
Itasca, IL 60143
630-735-3300
jsotos@jsotoslaw.com
eekl@jsotoslaw.com

</td><td></td></tr>
</table>

/s/  Daniel M. Noland