## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## WESTERN DIVISION

**JACK D. McCULLOUGH,**

Plaintiff,

v.

**ILLINOIS STATE POLICE AGENT
BRION HANLEY, et al.,**

Defendants.

No.: **17-cv-50116**

Honorable Frederick J. Kapala
Courtroom 5300

Magistrate Judge Iain D. Johnston
Courtroom 5200

### DEFENDANT ESCARCIDA'S
### ANSWER AND AFFIRMATIVE DEFENSES TO AMENDED COMPLAINT

NOW COMES Defendant, Victor Escarcida, by and through his attorneys, Ekl, Williams

& Provenzale LLC, and in Answer to Plaintiff Jack D. McCullough's Second Amended

Complaint, states as follows:

### INTRODUCTION

1.     Plaintiff Jack D. McCullough was tragically convicted of the 1957 abduction and homicide of Maria Ridulph – a crime he absolutely did not commit.

**ANSWER:**     Defendant Escarcida admits that Plaintiff Jack D. McCullough was convicted of the 1957 abduction and homicide of Maria Ridulph.  Defendant Escarcida denies the remaining allegations in this paragraph.

2.     Defendants gained national notoriety by "solving" the Ridulph murder over 50 years after it occurred.

**ANSWER:**     To the extent that this paragraph is directed at Defendant Escarcida, Defendant Escarcida denies this paragraph.

3.     In reality, Plaintiff was undeniably innocent, but Defendants accomplished their goal by fabricating false evidence and hiding exculpatory evidence to frame Mr. McCullough.

**ANSWER:**     To the extent that this paragraph is directed at Defendant Escarcida, Defendant Escarcida denies this paragraph.

4.      In so doing, Defendants ignored contemporaneous FBI reports created in 1957 exonerating Plaintiff from having anything whatsoever to do with this murder.

**ANSWER:**      To the extent that this paragraph is directed at Defendant Escarcida, Defendant Escarcida denies this paragraph.

5.      Defendants' malicious plan succeeded, and Plaintiff was wrongfully convicted.

**ANSWER:**      To the extent that this paragraph is directed at Defendant Escarcida, Defendant Escarcida denies this paragraph.

6.      It was only when Richard Schmack was elected as the chief prosecutor of DeKalb County that an honest and objective investigation of Plaintiff's conviction was done. That investigation reached the conclusion that Defendants blatantly ignored – that Mr. McCullough was undeniably innocent. Plaintiff's conviction was overturned, he was released from imprisonment under a life sentence, and later granted a certificate of innocence.

**ANSWER:**      Defendant Escarcida admits that Richard Schmack moved to overturn Plaintiff's conviction and as a result, Plaintiff was released from imprisonment and granted a certificate of innocence.  To the extent that the remaining allegations in this paragraph are directed at Defendant Escarcida, Defendant Escarcida denies these allegations.

7.      Nevertheless, Mr. McCullough, a United States veteran and grandfather, lost years of his life as a result of Defendants' actions. He brings this suit to redress the damages related to his wrongful conviction, and further seeks to hold accountable the individuals whose misconduct caused him irreparable harm.

**ANSWER:**      To the extent that this paragraph is directed at Defendant Escarcida, Defendant Escarcida denies that he engaged in misconduct or caused Plaintiff to be wrongfully convicted.   As to remaining allegations in this paragraph, Defendant Escarcida lacks sufficient knowledge as to Plaintiff's motivations for bringing his suit and therefore, denies the same.

## JURISDICTION AND VENUE

8.      This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of Plaintiff's rights as secured by the United States Constitution and applicable state law. This court has jurisdiction pursuant to 28 U.S.C. § 1331. Venue is proper under 28 U.S.C. § 1391(b). Most of the events giving rise to the claims asserted herein occurred here, and most parties live within or are affiliated with this District.

**ANSWER:**      Defendant Escarcida admits that Plaintiff has brought this action pursuant to 42 U.S.C. § 1983, that this court has jurisdiction pursuant to 28 U.S.C. § 1331, and

that venue is proper under 28 U.S.C. § 1391(b). Defendant Escarcida denies that Plaintiff is entitled to any relief in this matter.

## THE PARTIES

9.      Plaintiff Jack D. McCullough is a 77-year old military veteran who now resides in Washington State.

**ANSWER:**      Defendant Escarcida admits that Plaintiff is 77 years old and previously served in the military. Defendant Escarcida lacks sufficient knowledge as to where Plaintiff currently resides and therefore, denies the same.

10.      At all times relevant, Defendants Sergeant Daniel P. Smith, Agent Todd Damasky, Agent Brion Hanley, Agent Larry Kot, and unidentified employees of the Illinois State Police were employed as law enforcement officers by the Illinois State Police. All are sued in their individual capacities, and acted under color of law and within the scope of their employment during the investigation and prosecution of the Plaintiff for the abduction and homicide of Maria Ridulph.

**ANSWER:**      Defendant Escarcida offers no answer to this paragraph as it is not directed to him.

11.      At all times relevant, Defendants Detective Irene Lau, Detective Cloyd Steiger, and Detective Michael Ciesynski were police officers for the Seattle Police Department in Seattle, Washington. All are being sued in their individual capacity for actions taken under the color of law and within the scope of their employment during the investigation and prosecution of the Plaintiff for the abduction and homicide of Maria Ridulph.

**ANSWER:**      Defendant Escarcida offers no answer to this paragraph as it is not directed to him.

12.      Defendants Smith, Damasky, Hanley, Kot, Lau, Steiger, and Ciesynski are hereinafter referred to as "the Defendant Police Officers."

**ANSWER:**      Defendant Escarcida offers no answer to this paragraph as it is not directed to him.

13.      Defendant City of Seattle is a Washington State municipal corporation under the laws of the State of Washington, and operates the Seattle Police Department.

**ANSWER:**      Defendant Escarcida offers no answer to this paragraph as it is not directed to him.

14.      At all times relevant, Defendant former State's Attorney Clay Campbell headed the DeKalb County State's Attorney's Office, and former Assistant State's Attorneys William

Engerman, Victor Escarcida, and Julie Trevarthen were Assistant State's Attorneys for the DeKalb County State's Attorney's Office. All are being sued in their individual capacities for actions taken under the color of law and within the scope of their employment during the investigation and prosecution of the Plaintiff for the abduction and homicide of Maria Ridulph. Defendants Campbell, Engerman, Escarcida, and Trevarthen are being sued exclusively for their actions in investigation of Plaintiff outside of court proceedings, and not for any action related to their official in-court duties, to the extent any are applicable, concerning the prosecution of Plaintiff.

**ANSWER:** Defendant Escarcida admits that he formerly held the position of Assistant State's Attorney for the DeKalb County State's Attorney's Office, that William Engerman and Julie Trevarthen, were formerly Assistant State's Attorneys for the DeKalb County State's Attorney's Office, and that Clay Campbell was the former elected State's Attorney of DeKalb County. Defendant Escarcida admits that Plaintiff is seeking relief against him in his individual capacity, for actions taken within the scope of his employment and for actions that Plaintiff alleges took place during the investigation of Plaintiff. Defendant Escarcida denies that Plaintiff is entitled to any relief in this matter or that he engaged in any investigatory conduct.

15. When discussed collectively, Defendants Campbell, Engerman, Escarcida, and Trevarthen are hereinafter referred to as "the Prosecutor Defendants."

**ANSWER:** Defendant Escarcida offers no answer to this paragraph as it constitutes a statement of Plaintiff's intention and is not an allegation warranting an answer.

16. Defendant DeKalb County, Illinois operates the DeKalb County State's Attorney's office and is named as an indemnitor of Defendants Campbell, Engerman, Escarcida, and Trevarthen.

**ANSWER:** Defendant Escarcida lacks sufficient knowledge as to whether DeKalb County "operates" the DeKalb County State's Attorneys' office and therefore, denies the same. Defendant Escarcida admits that DeKalb County has been named in this lawsuit as the indemnitor of Defendants Campbell, Engerman, Escarcida, and Trevarthen.

## FACTS
### 1957 – The Kidnapping and Murder of Maria Ridulph

17. Maria Ridulph was seven years old in the winter of 1957. Maria lived in Sycamore, Illinois with her parents, two sisters, and brother.

**ANSWER:** Defendant Escarcida admits this paragraph.

18.     Maria was kidnapped on December 3, 1957. Her disappearance sparked a national outcry. Dozens of FBI agents descended on Sycamore, Illinois, to lead the investigation intended to rescue Maria and bring her kidnapper to justice.

**ANSWER:**     Defendant Escarcida admits that Maria was kidnapped on December 3, 1957 and that FBI agents participated in the investigation of her kidnapping. Defendant Escarcida lacks sufficient knowledge in which to admit or deny the remaining allegations in this paragraph and therefore, denies the same.

19.     To that end, two FBI agents moved to Sycamore, where they set up headquarters, so that they could dedicate more time to the investigation.

**ANSWER:**     Defendant Escarcida lacks sufficient knowledge in which to admit or deny this allegation and therefore, denies the same.

20.     Tragically, Maria's body was recovered on April 26, 1958, near Galena, Illinois, in a heavily forested area off Highway 20. Once it was determined the body had not crossed state lines, the FBI agents concluded their investigation without identifying the perpetrator.

**ANSWER:**     Defendant Escarcida admits that Maria's body was recovered on April 26, 1958, near Galena, Illinois off Highway 20. Defendant Escarcida lacks sufficient knowledge in which to admit or deny the remaining allegations in this paragraph and therefore, denies the same.

21.     The FBI, however, left a comprehensive record of its investigation. Over four months, the FBI meticulously documented thousands of interviews and hundreds of suspects.

**ANSWER:**     Defendant Escarcida admits that the FBI did prepare reports regarding its investigation. Defendant Escarcida lacks sufficient knowledge in which to admit or deny the remaining allegations in this paragraph and therefore, denies the same.

22.     The following facts were documented in the FBI's exhaustive investigation, taken from interviews with the victim's family and witnesses in the days following the abduction.

**ANSWER:**     Defendant Escarcida lacks sufficient knowledge in which to admit or deny this paragraph and therefore, denies the same.

23.     The timeline of December 3, 1957, establishes that Mr. McCullough was in Rockford, over 30 miles away, at the time of the crime and thus could not possibly have been the perpetrator.

**ANSWER:**     Defendant Escarcida denies this paragraph.

**5:50-6:30 p.m. Maria and Kathy Play Together Alone**

24.     According to her mother, Maria left her house to play outside at 5:50 p.m.

**ANSWER:**     Defendant Escarcida lacks sufficient knowledge in which to admit or deny this
paragraph and therefore, denies the same.

25.     At 6:02 p.m., Maria's eight year-old friend Kathy Sigman went to play with
Maria.

**ANSWER:**     Defendant Escarcida lacks sufficient knowledge in which to admit or deny this
paragraph and therefore, denies the same.

26.     The two girls played on the corner two doors down from Maria's house (and
seven doors down from Kathy's).

**ANSWER:**     Defendant Escarcida lacks sufficient knowledge in which to admit or deny this
paragraph and therefore, denies the same.

27.     At least seven people observed the two girls playing alone on the corner between
5:50 and 6:30 p.m.

**ANSWER:**     Defendant Escarcida lacks sufficient knowledge in which to admit or deny this
paragraph and therefore, denies the same.

28.     Specifically, Maria's mother reported driving her eldest daughter to music class at
6 p.m. and returning at 6:05 p.m., and that she observed Maria and Kathy playing on the corner
alone both times.

**ANSWER:**     Defendant Escarcida lacks sufficient knowledge in which to admit or deny this
paragraph and therefore, denies the same.

29.     Other neighbors also reported observing the girls playing together on the corner in
the same time frame without any adults around.

**ANSWER:**     Defendant Escarcida lacks sufficient knowledge in which to admit or deny this
paragraph and therefore, denies the same.

**6:30 p.m. First Report of the Perpetrator's Arrival**

30.     Kathy reported that at about 6:30 p.m., a man approached Maria and Kathy and
began playing with them.

**ANSWER:**     Defendant Escarcida lacks sufficient knowledge in which to admit or deny this paragraph and therefore, denies the same.

31.     The man was a stranger to Maria and Kathy.

**ANSWER:**     Defendant Escarcida lacks sufficient knowledge in which to admit or deny this paragraph and therefore, denies the same.

32.     The man gave Maria a piggyback ride and then returned to the corner. The man told Maria he would give her another piggyback ride if she could find a doll.

**ANSWER:**     Defendant Escarcida lacks sufficient knowledge in which to admit or deny this paragraph and therefore, denies the same.

33.     Maria went home, retrieved her doll, and returned to the corner for another piggyback ride.

**ANSWER:**     Defendant Escarcida lacks sufficient knowledge in which to admit or deny this paragraph and therefore, denies the same.

34.     Maria's trip home to get a doll occurred at 6:40 p.m., as recounted by her mother.

**ANSWER:**     Defendant Escarcida lacks sufficient knowledge in which to admit or deny this paragraph and therefore, denies the same.

35.     That time was confirmed by Maria's father, who reported that Maria got her doll while he was watching the television show Cheyenne, which began airing at 6:30 p.m. that evening, and by her brother, who also stated that Maria obtained her doll after 6:30 p.m.

**ANSWER:**     Defendant Escarcida lacks sufficient knowledge in which to admit or deny this paragraph and therefore, denies the same.

## Maria is Abducted between 6:50 and 7 p.m.

36.     Maria returned to the corner with her doll and received another piggyback ride. The two girls played with the stranger for a while longer until Kathy's hands got cold and she went home to get a pair of mittens. Before she left, Kathy asked the stranger the time and he told her it was 7 p.m.

**ANSWER:**     Defendant Escarcida lacks sufficient knowledge in which to admit or deny this paragraph and therefore, denies the same.

37.     Kathy's mother reported that Kathy came home to get her mittens at approximately 6:50-6:55 p.m.

**ANSWER:**   Defendant Escarcida lacks sufficient knowledge in which to admit or deny this paragraph and therefore, denies the same

38.   When Kathy returned to the corner with her mittens, Maria and the stranger were gone. She was never seen alive again.

**ANSWER:**   Defendant Escarcida  admits this paragraph.

39.   Accordingly, the FBI determined that Maria was abducted between 6:50 p.m. and 7 p.m.

**ANSWER:**   Defendant Escarcida lacks sufficient knowledge in which to admit or deny this paragraph and therefore, denies the same

### 6:57 p.m. – Records Confirm that Plaintiff is Over Thirty Miles Away

40.   At the time the perpetrator was abducting Maria Ridulph, Mr. McCullough was stepping off a train in Rockford.

**ANSWER:**   Defendant Escarcida denies this paragraph.

41.   Newly eighteen years old, Mr. McCullough had spent the day of December 3, 1957, at the Air Force's induction center in Chicago, receiving an x-ray to determine his fitness for duty.

**ANSWER:**   Defendant Escarcida lacks sufficient knowledge in which to admit or deny this paragraph and therefore, denies the same.

42.   Mr. McCullough had been planning to enlist for some time and his physical was the last step. The personnel in Chicago directed Mr. McCullough to bring a note to the recruiting office in Rockford, stating that if Plaintiff's doctor confirmed his good health, he could enlist in the military.

**ANSWER:**   Defendant Escarcida lacks sufficient knowledge in which to admit or deny this paragraph and therefore, denies the same.

43.   At approximately 5:15 p.m., Plaintiff boarded a train in Chicago bound for Rockford. He arrived in Rockford at about 6:45 p.m., and walked to the United States Post Office in town, which also housed the Air Force recruiting center.

**ANSWER:**   Defendant Escarcida denies this paragraph.

44.   At the post office, Mr. McCullough found the recruiting center closed, but ran into a military officer, who directed him to speak to Staff Sergeant Froom.

**ANSWER:**     Defendant Escarcida lacks sufficient knowledge in which to admit or deny this paragraph and therefore, denies the same.

45.     Mr. McCullough followed this direction. While still in Rockford, Plaintiff contacted Sergeant Froom, who in turn advised Mr. McCullough to call the recruiting sergeant, Sergeant Oswald, and relay the information he had received from the induction center. In Sergeant Froom's presence, Plaintiff then called Sergeant Oswald and passed along the message from the induction center.

**ANSWER:**     Defendant Escarcida lacks sufficient knowledge in which to admit or deny this paragraph and therefore, denies the same.

46.     While still at the post office, at 6:57 p.m., Mr. McCullough placed a collect call to his parents' home, seeking a ride home to Sycamore from his father.

**ANSWER:**     Defendant Escarcida lacks sufficient knowledge in which to admit or deny this paragraph and therefore, denies the same.

47.     Mr. McCullough also called his then-girlfriend, Jan Edwards, and made a date to see her that night at her home.

**ANSWER:**     Defendant Escarcida denies this paragraph.

48.     Mr. McCullough ate some pie at a nearby diner while awaiting his father; his father then drove Mr. McCullough the approximately thirty miles and delivered him to Ms. Edwards' home.

**ANSWER:**     Defendant Escarcida lacks sufficient knowledge in which to admit or deny this paragraph and therefore, denies the same.

49.     As part of the wide net cast by their investigation, the FBI questioned Mr. McCullough and his parents just days after Maria's abduction.

**ANSWER:**     Defendant Escarcida lacks sufficient knowledge in which to admit or deny this paragraph and therefore, denies the same.

50.     Mr. McCullough's parents confirmed that they had received a call from Mr. McCullough at 7 p.m. on December 3, and that Plaintiff's father had driven to Rockford to retrieve him.

**ANSWER:**     Defendant Escarcida lacks sufficient knowledge in which to admit or deny this paragraph and therefore, denies the same.

51.     The local telephone company confirmed that the collect call from the post office to Mr. McCullough's parents' house was placed at 6:57 p.m. by Mr. McCullough.

**ANSWER:**     Defendant Escarcida lacks sufficient knowledge in which to admit or deny this paragraph and therefore, denies the same.

52.     The FBI questioned Plaintiff, and he related his whereabouts throughout the day, as described above.

**ANSWER:**     Defendant Escarcida lacks sufficient knowledge in which to admit or deny this paragraph and therefore, denies the same.

53.     Although Plaintiff did not know the names of any of the three Air Force personnel he spoke to in Rockford, the FBI found Sergeant Oswald, who confirmed that he spoke to Plaintiff shortly after 7 p.m. on December 3rd at the Rockford recruiting center. Sergeant Oswald also confirmed that Plaintiff had interacted with Colonel Liebovich and Sergeant Froom while in Rockford just before he called Sergeant Oswald. Sergeant Oswald related that he then met Plaintiff in person the next day.

**ANSWER:**     Defendant Escarcida lacks sufficient knowledge in which to admit or deny this paragraph and therefore, denies the same.

54.     Given his alibi – that Plaintiff was in Rockford, over thirty miles from Sycamore at the same time Maria was being abducted – the FBI cleared Mr. McCullough as a suspect.

**ANSWER:**     Defendant Escarcida denies this paragraph.

55.     The FBI's decision to clear Mr. McCullough as a suspect was correct because Mr. McCullough could not have committed the crime.

**ANSWER:**     Defendant Escarcida denies this paragraph.

56.     Mr. McCullough then carried on with his life. On December 11, 1957, he left home for a four year tour in the Air Force. He was then honorably discharged.

**ANSWER:**     Defendant Escarcida lacks sufficient knowledge in which to admit or deny this paragraph and therefore, denies the same.

57.     Mr. McCullough later re-enlisted in the Armed Services, this time in the Army. Mr. McCullough worked in Army Intelligence, working his way to become a Captain and serving in Vietnam.

**ANSWER:**     Defendant Escarcida lacks sufficient knowledge in which to admit or deny this paragraph and therefore, denies the same.

58.     Mr. McCullough left the service after spending over a decade in the Army, and moved to Washington State.

**ANSWER:**     Defendant Escarcida lacks sufficient knowledge in which to admit or deny this paragraph and therefore, denies the same.

59.     There, Mr. McCullough raised a family and he and his wife looked forward to their retirement together.

**ANSWER:**     Defendant Escarcida lacks sufficient knowledge in which to admit or deny this paragraph and therefore, denies the same.

60.     In 2008, Mr. McCullough had no inkling that a number of law enforcement officers were conspiring to frame him for the Maria Ridulph murder.

**ANSWER:**     To the extent that this paragraph is directed at Defendant Escarcida, Defendant Escarcida denies that he conspired to frame Plaintiff.  Defendant Escarcida lacks sufficient knowledge in which to admit or deny the remaining allegations in this paragraph and therefore, denies the same.

### 2008 – Defendant Hanley Reopens the Ridulph Murder Investigation

61.     In the fifty years after Maria's death, many tips were provided to the police, but none panned out. It was the type of notorious case that garnered attention, for better or worse.

**ANSWER:**     Defendant Escarcida lacks sufficient knowledge in which to admit or deny this paragraph and therefore, denies the same.

62.     Mr. McCullough had a contentious relationship with his step-sister, Janet Tessier, and they were not on speaking terms after the turn of the century.

**ANSWER:**     Defendant Escarcida lacks sufficient knowledge in which to admit or deny this paragraph and therefore, denies the same.

63.     Mr. McCullough's mother died in 1994, and his father passed away in 2006.

**ANSWER:**     Defendant Escarcida admits that Plaintiff's mother died in 1994.  Defendant Escarcida lacks sufficient knowledge in which to admit or deny the date that Plaintiff's father passed away and therefore, denies the same.

64.     In 2008, Janet came forward with a salacious accusation—she claimed that, on her death bed fourteen years prior, while she drifted in and out of being lucid, including periods where she seemed comatose and incoherent, Plaintiff's mother had said that Plaintiff had something to do with the "two little girls," one of whom disappeared.

**ANSWER:**      Defendant Escarcida admits that in 2008, Janet Tessier told ISP officers that in 1994 her mother told her "remember the two little girls, John did it", "John was the one who killed that girl (Maria)", and that her mother instructed her to tell the police that John killed Maria. Defendant Escarcida lacks sufficient knowledge in which to admit or deny the remaining allegations in this paragraph and therefore, denies the same.

65.      Janet claimed that Plaintiff's mother was referencing the Maria Ridulph abduction.

**ANSWER:**      Defendant Escarcida admits this paragraph.

66.      In reality, Plaintiff's mother was in an altered mental state hours before her death after a long illness.

**ANSWER:**      Defendant Escarcida lacks sufficient knowledge in which to admit or deny this allegation and therefore, denies the same.

67.      In addition, Plaintiff's other half-sister, Mary, who was also present, stated that Plaintiff's mother only uttered the vague phrase, "he did it," without explaining who "he" was or what "he" did.

**ANSWER:**      Defendant Escarcida denies this paragraph.

68.      The timing of the allegation was both suspect and prejudicial to Plaintiff. By waiting fourteen years before coming forward, until after Plaintiff's father died, Plaintiff did not have his father available to rebut the totally false claim.

**ANSWER:**      Defendant Escarcida denies this paragraph.

69.      Nevertheless, Defendant Hanley ignored the obvious problems surrounding the over a decade late report that a mentally-unstable woman made a vague statement, and set off in hopes of making a name for himself in connection with this famous crime. He started by re-opening the Ridulph case.

**ANSWER:**      Defendant Escarcida admits that the Illinois State Police reopened the investigation into the abduction and murder of Maria Ridulph in 2008. To the extent that any of the remaining allegations in this paragraph are directed at Defendant Escarcida, Defendant Escarcida denies those allegations.

70.      In October 2008, less than two weeks after the case was re-opened, Defendants Hanley and Kot began working together to build a case that purposefully targeted Mr. McCullough.

**ANSWER:**    To the extent that this paragraph is directed at Defendant Escarcida, Defendant Escarcida denies this paragraph.

71.    Along the way, these Defendants expanded the reach of their agreement to include law enforcement officials from other jurisdictions—including the Seattle Police Department and the Individually-named Seattle Defendants, and DeKalb County State's Attorney' office and the Individually-named prosecutor Defendants.

**ANSWER:**    To the extent that this paragraph is directed at Defendant Escarcida, Defendant Escarcida denies this paragraph.

72.    Over the next year and a half, Defendants spent countless hours gathering information about the crime and, specifically, finding anyone who would talk to them about Mr. McCullough.

**ANSWER:**    To the extent that this paragraph is directed at Defendant Escarcida, Defendant Escarcida denies this paragraph.

73.    Given the passage of time, many people with knowledge of the crime had long since passed away.

**ANSWER:**    Defendant Escarcida lacks sufficient knowledge in which to either admit or deny this paragraph and therefore, denies the same.

74.    Inexplicably, all of the Defendants wrongly decided that Mr. McCullough had something to do with Maria's death.

**ANSWER:**    To the extent that this paragraph is directed at Defendant Escarcida, Defendant Escarcida denies this paragraph.

75.    Through the course of the investigation, each of the individually- named defendants reached this erroneous conclusion and then, in different ways and at different times, agreed to pursue Mr. McCullough as the murderer despite his innocence.

**ANSWER:**    To the extent that this paragraph is directed at Defendant Escarcida, Defendant Escarcida denies this paragraph.

76.    Due to their tunnel vision, the Defendants reached – and maintained – this conclusion despite obtaining the FBI's file, including the documents conclusively establishing Mr. McCullough's innocence *via* his alibi.

**ANSWER:**    To the extent that this paragraph is directed at Defendant Escarcida, Defendant Escarcida denies this paragraph.

## 2009 – Defendants' Engage in Pervasive Misconduct
## To Target Plaintiff Without Any Basis

77.　　In 2009, the DeKalb County State's Attorney's Office began actively working on the Ridulph investigation with the Illinois State Police.

**ANSWER:**　　To the extent that this paragraph is directed at Defendant Escarcida, Defendant Escarcida denies this paragraph.

78.　　With Plaintiff already in mind, Defendant Hanley began meeting and coordinating the Ridulph investigation with members of the DeKalb County State's Attorney's office, including but not limited to Defendants Engerman, Trevarthen, and Escarcida.

**ANSWER:**　　To the extent that this paragraph is directed at Defendant Escarcida, Defendant Escarcida denies this paragraph.

79.　　Defendant Engerman was the second in command of the DeKalb State's Attorney's Office, and decided to direct the investigation into Jack McCullough. Defendant Engerman instructed the Defendant Police Officers to follow specific leads, including trying to dig up as much dirt as possible on Plaintiff. Defendant Engerman specifically requested he be informed after every single lead was investigated by the Police Officer Defendants, and stated that he "wants to be involved as a working participant of" the McCullough investigation.

**ANSWER:**　　Defendant Escarcida offers no answer to this paragraph as it is not directed at him.

80.　　In 2010, Defendants Hanley and Damasky contacted Jan Edwards. Ms. Edwards informed the investigators what she recalled from the night of the abduction – that she had a date to see Mr. McCullough at her home, Plaintiff arrived at her home, and he was excited to be enlisting in the military. Two months later, Ms. Edwards provided these Defendants with a train ticket issued to Plaintiff by the military that he had given to her on the night of the abduction, which she had found tucked inside an old picture frame.

**ANSWER:**　　Defendant Escarcida admits that in 2010 Defendants Hanley and Damasky interviewed Jan Edwards and that Ms. Edwards provided Hanley and Damasky with a train ticket that she stated was given to her by Plaintiff.  Defendant Escarcida denies the remaining allegations in this paragraph.

81.　　Working with others, Defendants Hanley and Damasky, however, concocted an entirely false version of their interview with Edwards.

**ANSWER:**　　To the extent that his paragraph is directed at Defendant Escarcida, Defendant Escarcida denies this paragraph.

82.     They falsely reported that Ms. Edwards stated that she did not remember seeing Mr. McCullough that night, that they did not have a date to meet, and that Mr. McCullough's enlistment in the military was both abrupt and a complete surprise to her.

**ANSWER:**     To the extent that his paragraph is directed at Defendant Escarcida, Defendant Escarcida denies this paragraph.

83.     In September 2010, Defendants Hanley and Damasky approached Kathy Sigman, now sixty-one years old.

**ANSWER:**     Defendant Escarcida admits this paragraph.

84.     Defendants Hanley and Damasky spoke with Ms. Sigman for over an hour. During this interview, Hanley and Damasky asked Ms. Sigman to describe the man who played with her and Maria over fifty years prior. Ms. Sigman indicated that the man was "tall, slender face, sandy blonde hair, clean shaven, maybe twenty to thirty years of age."

**ANSWER:**     Defendant Escarcida admits this paragraph.

85.     Following the interview, Defendants Hanley, Damasky, and Smith concocted a photo array that was obviously biased against Mr. McCullough and did not fit the description Ms. Sigman gave Defendants Hanley and Damasky.

**ANSWER:**     To the extent that his paragraph is directed at Defendant Escarcida, Defendant Escarcida denies this paragraph.

86.     Defendant Engerman viewed and approved the overtly suggestive photo array and encouraged Defendants Hanley and Smith to show it to Ms. Sigman.

**ANSWER:**     Defendant Escarcida denies this paragraph.

87.     The bias of the photo array was apparent. For one thing, although Kathy described the perpetrator as having blond hair, three of the photos in the array had dark hair.

**ANSWER:**     Defendant Escarcida denies that the bias of the photo array was apparent. Defendant Escarcida lacks sufficient knowledge in which to admit or deny the remaining allegations in this paragraph and therefore, denies the same.

88.     Indeed, only two of the six photos (one of which was Plaintiff's) might fit the description of the perpetrator as having blond hair and a slender face.

**ANSWER:**     Defendant Escarcida denies this paragraph.

89.     To make matters worse, Defendants used an old photograph of Plaintiff and five fillers pulled from a high school yearbook.

**ANSWER:**     Defendant Escarcida lacks sufficient knowledge in which to admit or deny this paragraph and therefore, denies the same.

90.     The yearbook photos were uniform in that each photograph depicted a young man in a suit and tie, with a light background, looking slightly away from the camera. Each of these photos was on light background.

**ANSWER:**     Defendant Escarcida lacks sufficient knowledge in which to admit or deny this paragraph and therefore, denies the same.

91.     By contrast, Plaintiff's photograph depicted him wearing neither a suit nor a tie, looking directly at the camera, and was set in front of a dark background.

**ANSWER:**     Defendant Escarcida lacks sufficient knowledge in which to admit or deny this paragraph and therefore, denies the same.

92.     As a result, Plaintiff's photograph was the only photograph that stood out from the others.

**ANSWER:**     Defendant Escarcida denies this paragraph.

93.     Nevertheless, Defendants Hanley and Smith, presented the photo array to Sigman in September 2010.

**ANSWER:**     Defendant Escarcida admits that in September 2010, Defendants Hanley and Smith presented Sigman with a photo array.

94.     Following protocol, Defendants Hanley and Smith presented each photograph from the array sequentially, indicating that they understood that a side by side comparison of photos might lead to an unreliable identification.

**ANSWER:**     Defendant Escarcida admits that the photographs were shown to Sigman sequentially.   Defendant Escarcida lacks sufficient knowledge in which to admit or deny the remaining allegations in this paragraph and therefore, denies the same.

95.     Sigman did not select any of the photographs from the initial presentation of the array. The procedure should have stopped there, with a result of no identification.

**ANSWER:**     Defendant Escarcida denies this paragraph.

96.      Instead, these Defendants permitted Sigman to exclude three photos (the three dark haired fillers) and compare the remaining three photographs together. After four minutes of contemplation, Sigman chose Defendants' suspect, Mr. McCullough.

**ANSWER:**      Defendant Escarcida admits that Sigman identified the Plaintiff as the person that approached her and Maria on December 3, 1957. Defendant Escarcida denies the remaining allegations in this paragraph.

97.      This identification was totally unreliable. Defendants Hanley and Smith's decision to show Sigman the photo array was unnecessarily suggestive, tainted her memory, and manufactured a false identification.

**ANSWER:**      Defendant Escarcida denies this paragraph.

98.      But, Defendants Engerman, Hanley, Damasky, and Smith knew that they had to put their thumbs on the scale in order to obtain an identification from Ms. Sigman that would implicate Plaintiff. Indeed, these Defendants knew that – based on the FBI documents and the more than fifty years that had passed since the murder – no line-up should have ever been shown to Ms. Sigman.

**ANSWER:**      To the extent that this paragraph is directed at Defendant Escarcida, Defendant Escarcida denies this paragraph.

99.      Kathy Sigman was only eight years old at the time of the crime and was shown thousands of photographs by the FBI. Her initial description indicated that the perpetrator was a stranger and was missing an eyetooth. This description excluded Mr. McCullough, who lived just a few blocks away in the small town, and was not missing any teeth.

**ANSWER:**      Defendant Escarcida admits that Kathy Sigman was eight years old at the time of Maria Ridulph's abduction. Defendant Escarcida lacks sufficient knowledge in which to admit or deny the remaining allegations in this paragraph and therefore, denies the same.

100.      Moreover, Kathy's description had changed significantly over time.

**ANSWER:**      Defendant Escarcida lacks sufficient knowledge in which to admit or deny this paragraph and therefore, denies the same.

101.      In fact, in the two weeks following Maria's abduction, Kathy's description of "Johnny" changed at least three different times, with some of the identifying characteristics changing significantly, including age, height, hair color and even the way she described the perpetrator's teeth.

**ANSWER:** Defendant Escarcida lacks sufficient knowledge in which to admit or deny this paragraph and therefore, denies the same.

102. For example, in the first two weeks, Kathy first description of "Johnny's" age started as between "24 and 25," expanded to a range of "25 and 35" and then morphed into the claim that "Johnny" actually just told her he was 24. At the same time, the perpetrator, according to Kathy, got shorter—he started out at about 6 feet tall, but that description shifted to 5'8." Similarly, Kathy's description of "Johnny's" teeth varied—beginning with the claim that they were "even" and "pretty" which later became a description of "large and yellowish."

**ANSWER:** Defendant Escarcida lacks sufficient knowledge in which to admit or deny this paragraph and therefore, denies the same.

103. Sigman had previously identified two other men as being the perpetrator prior to been shown the photo array in 2011.

**ANSWER:** Defendant Escarcida lacks sufficient knowledge in which to admit or deny this paragraph and therefore, denies the same.

104. To bolster the shaky identification, Defendants falsely claimed that Ms. Sigman had "immediately pointed to the photo of [Plaintiff] and said, 'that's him.'" Similarly, the Defendants also lied in alleging that Ms. Sigman's description indicated that the perpetrator had a gap in his front teeth, which happened to fit Plaintiff's description. This was a further fabrication.

**ANSWER:** To the extent that this paragraph is directed at Defendant Escarcida, Defendant Escarcida denies this paragraph.

105. Based on the above, all of the Defendants knew that Sigman's "identification" could not provide probable cause to believe that Mr. McCullough had anything to do with the murder. Indeed, none of the Defendants moved to arrest Plaintiff until nine months after Sigman's unreliable identification.

**ANSWER:** Defendant Escarcida admits that Plaintiff was not arrested until June of 2011. Defendant Escarcida further admits that he never "moved" to arrest Plaintiff. To the extent that any of the remaining allegations in this paragraph are directed at Defendant Escarcida, Defendant Escarcida denies those allegations.

106. Moreover, Mr. McCullough's alibi wholly exculpated him from having anything to do with Maria's death. Unfazed, Defendants Hanley, Kot, Smith, Damasky, Engerman, Trevarthen, and Escarcida decided to manipulate the evidence in an attempt to falsely suggest that Plaintiff had the opportunity to commit the crime.

**ANSWER:**  To the extent that this paragraph is directed at Defendant Escarcida, Defendant Escarcida denies this paragraph.

107.  Knowing that Plaintiff was conclusively established to have been in Rockford at 6:57 p.m., these Defendants knew that the only way they could charge Plaintiff was if the time of the abduction was fabricated to make it earlier.

**ANSWER:**  To the extent that this paragraph is directed at Defendant Escarcida, Defendant Escarcida denies this paragraph.

108.  Accordingly, without any evidentiary support whatsoever, these Defendants falsely maintained throughout the investigation that the crime occurred between 6 and 6:15 p.m.

**ANSWER:**  To the extent that this paragraph is directed at Defendant Escarcida, Defendant Escarcida denies this paragraph.

109.  This notion was, of course, impossible. Maria's parents both saw her alive after 6:30 p.m., when the television show Cheyenne began, and by all accounts the abduction occurred between 6:50 and 7 p.m.

**ANSWER:**  Defendant Escarcida lacks sufficient knowledge in which to admit or deny paragraph and therefore, denies the same.

110.  In fabricating evidence, these Defendants created a false timeline to attempt to support the false idea that Plaintiff had enough time to commit the crime and then traveled to Rockford in time to meet with the Air Force officials and place the collect call to his parents.

**ANSWER:**  To the extent that this paragraph is directed at Defendant Escarcida, Defendant Escarcida denies this paragraph.

111.  Prior to Mr. McCullough's arrest, interrogation, and lie detector test, each of the Prosecutor Defendants had participated in the investigation of the Ridulph homicide and agreed to work with the Defendant Officers to falsely implicate Plaintiff.

**ANSWER:**  To the extent that this paragraph is directed at Defendant Escarcida, Defendant Escarcida denies this paragraph.

### 2011 - Defendant Campbell Joins the Investigation

112.  In November 2010, Defendant Campbell was elected State's Attorney of DeKalb County.

**ANSWER:**  Defendant Escarcida admits this paragraph.

113.     Shortly following his election, Defendant Campbell became personally involved in the McCullough investigation.

**ANSWER:**     Defendant Escarcida offers no answer to this paragraph as it is not directed to him.

114.     Eager to "solve" the nation's oldest cold case, Defendant Campbell took over Defendant Engerman's previous role as the main person in the DeKalb County State's Attorney's Office directing the Defendant Police Officers in the investigation.

**ANSWER:**     Defendant Escarcida offers no answer to this paragraph as it is not directed to him.

115.     In his eagerness, Defendant Campbell indicated to the Illinois Defendant Officers that he wanted to oversee the case long before Plaintiff was even arrested.

**ANSWER:**     Defendant Escarcida offers no answer to this paragraph as it is not directed to him.

116.     Although there was no probable cause to believe that Mr. McCullough was involved with Maria Ridulph's disappearance and murder, Defendant Campbell participated in the criminal investigation of Mr. McCullough, alongside Defendants Trevarthen, and Escarcida.

**ANSWER:**     Defendant Escarcida denies this paragraph.

117.     In so doing, Defendants Campbell, Trevarthen, and Escarcida had agreed not to conduct a fair, impartial investigation. Instead, quite apart from seeking honest evidence or probable cause, Defendant Campbell was focused solely on investigating and implicating Plaintiff.

**ANSWER:**     Defendant Escarcida denies this paragraph.

118.     Defendants Campbell, Trevarthen, and Escarcida, worked closely with the Illinois Defendant Officers to continue the criminal investigation for several months before the investigation turned to Seattle. This included regularly consulting with the Defendant Police Officers, maintaining close communication and direction of the investigation, and using the resources of their office to investigate the crime.

**ANSWER:**     To the extent that this paragraph is directed at Defendant Escarcida, Defendant Escarcida denies this paragraph. Defendant Escarcida lacks sufficient knowledge in which to admit or deny the remaining allegations in this paragraph and therefore, denies the same.

119.    Defendants Smith, Damasky, Hanley, Kot, Campbell, Trevarthen, and Escarcida knew that there was no probable cause to arrest Mr. McCullough for this cold case.

**ANSWER:**    Defendant Escarcida denies this paragraph.

120.    Accordingly, these Defendants sought to gather more bogus and false evidence against Plaintiff by coordinating with police officers in another state – Washington – to attempt to secure his false arrest.

**ANSWER:**    Defendant Escarcida denies this paragraph.

### Seattle Police Officers Agree to Work to Frame Plaintiff

121.    The individual defendants from the Illinois State Police and DeKalb County State's Attorney's Office had learned that that Mr. McCullough relocated to Seattle. To further implement their agreement, Defendants contacted officers from the Seattle Police Department, including Defendants Lau, Steiger, and Ciesynski, and possibly others.

**ANSWER:**    To the extent that this paragraph is directed at Defendant Escarcida, Defendant Escarcida denies this paragraph. Defendant Escarcida lacks sufficient knowledge in which to admit or deny the remaining allegations in this paragraph and therefore, denies the same.

122.    After being asked to assist in investigating a homicide in Illinois, and understanding that they would be seeking to secure the prosecution of Plaintiff in Illinois (and not Washington State), Defendants Lau, Steiger, and Ciesynski agreed to work with the Illinois-based Defendants from the Illinois State Police and DeKalb County State's Attorney's Office to attempt to link Plaintiff to the homicide, even though he was innocent.

**ANSWER:**    Defendant Escarcida admits that the Seattle Defendants did assist the Illinois State Police in the arrest and questioning of Plaintiff.  To the extent that any other allegations in this paragraph are directed at Defendant Escarcida, Defendant Escarcida denies the allegations.

123.    Defendants Lau, Steiger, and Ciesynski knew they had agreed to participate in investigating a "cold-case murder'" in Illinois and that any prosecution of Plaintiff would take place in Illinois, not Seattle.

**ANSWER:**    Defendant Escarcida offers no answer to this paragraph as it is not directed to him.

124.    These Defendants also understood that, though they would be conducting investigative activities in Washington, using their authority as Seattle PD officers, and even

using the facilities and resources of the Seattle Police Department, that the aim of their investigation was Sycamore, DeKalb County, Illinois.

**ANSWER:**     Defendant Escarcida offers no answer to this paragraph as it is not directed to him.

125.     In so doing, Defendants Ciesynski and Steiger met with the Illinois- based Defendants Hanley and Damasky who had traveled to Seattle in an attempt to secure Plaintiff's false arrest for the Ridulph homicide.

**ANSWER:**     Defendant Escarcida offers no answer to this paragraph as it is not directed to him.

126.     In furtherance of their agreement to coordinate their investigation, the Seattle Defendant Officers and Illinois Defendants collaborated extensively throughout the investigation; including, for example, writing police reports in conjunction with one another and exchanging other contemporaneously-generated reports when they had not been written together.

**ANSWER:**     To the extent that this paragraph is directed at Defendant Escarcida, Defendant Escarcida denies this paragraph.  Defendant Escarcida lacks sufficient knowledge in which to admit or deny the remaining allegations in this paragraph and therefore, denies the same.

127.     In fact, Defendant Steiger both authored and signed the Statement of Probable Cause and the Affidavit for Search Warrant that led to Plaintiff's arrest.  Defendant Steiger, with knowledge and approval of Defendants Ciesynski, Hanley, and Damasky, included false information in that affidavit in an attempt to make it appear that probable cause to arrest Plaintiff existed, where it did not.

**ANSWER:**     Defendant Escarcida denies that there was a lack of probable cause to arrest Plaintiff.  Defendant Escarcida lacks sufficient knowledge in which to admit or deny the remaining allegations in this paragraph and therefore, denies the same.

128.     Some of the false facts in that affidavit included: falsely claiming that Sigman "immediately" identified Plaintiff from a photo array; falsely stating that Maria disappeared at 6:15 p.m., to try to cast doubt on Plaintiff's alibi; repeating the above lies that Jan Edwards did not remember seeing Mr. McCullough the night of the abduction and that her parents would not have let her out of the house on that night, when in fact she never said those things; claiming that Plaintiff had legally changed his name shortly after Maria's disappearance, when that did not occur until many decades later; and omitting the fact that Air Force personnel had verified Plaintiff's alibi, in a further effort to delegitimize Plaintiff's alibi.

**ANSWER:**     Defendant Escarcida denies this paragraph.

129.    Based on Defendant Steiger's false affidavit, Mr. McCullough was ultimately arrested and questioned.

**ANSWER:**    Defendant Escarcida admits that McCullough was arrested and questioned but denies that remaining allegations in this paragraph.

130.    Prior to the arrest and interrogation, the Seattle Defendant Officers consulted with the Defendants based in Illinois, and agreed upon the manner in which the investigation would proceed, how they would arrest Plaintiff, and how they would attempt to get him to provide an inculpatory statement in the decades- old, Illinois-based homicide of Maria Ridulph.

**ANSWER:**    To the extent that this paragraph is directed at Defendant Escarcida, Defendant Escarcida denies this paragraph. Defendant Escarcida lacks sufficient knowledge in which to admit or deny the remaining allegations in this paragraph and therefore, denies the same.

131.    To that end, Defendants Ciesynski and Steiger actively participated in the investigation, including: traveling to Plaintiff's former employer's office, going to Plaintiff's home, contacting Plaintiff under false pretenses, lying to Plaintiff about why they had gone to his former employers, and lying about why they eventually went to his home looking for him.

**ANSWER:**    Defendant Escarcida lacks sufficient knowledge in which to admit or deny this paragraph and therefore, denies the same.

132.    Thereafter, the Seattle Officers participated in the arrest and interrogation of Mr. McCullough alongside the ISP Defendants.

**ANSWER:**    Defendant Escarcida admits this paragraph.

133.    From Seattle, the Defendant Officers Ciesynski, Steiger, Hanley, Damasky, and Lau continued the coordination of the investigation with Defendants Campbell, Trevarthen, and Escarcida.

**ANSWER:**    Defendant Escarcida denies this paragraph.

134.    In doing so, Defendants Ciesynski, Steiger, and Lau knowingly participated in the investigation of Mr. McCullough for the murder of Maria Ridulph in Illinois.

**ANSWER:**    Defendant Escarcida denies this paragraph to the extent that it relies upon the allegations in paragraph 133. Defendant Escarcida admits that Defendants Ciesynski, Steiger, and Lau knowingly participated in the investigation of Mr. McCullough for the murder of Maria Ridulph in Illinois.

135.     At no point did any of the Seattle Defendant Officers refuse to participate in the investigation or intervene on behalf of Mr. McCullough to ensure that his constitutional rights were not violated.

**ANSWER:**     Defendant Escarcida offers no answer to this paragraph as it is not directed to him.

136.     Instead, in concert with the Illinois Defendant Officers, and DeKalb County State's Attorney Defendants including but not limited to Defendants Campbell, Trevarthen, and Escarcida, the Seattle Defendant Officers agreed to participate, conduct, and cooperate in the investigation just as they would have done if the crime they were investigating were in Washington.

**ANSWER:**     To the extent that this paragraph is directed at Defendant Escarcida, Defendant Escarcida denies this paragraph.

137.     While the Defendant Officers were in Seattle, Defendants Campbell, Trevarthen, and Escarcida thus coordinated with the Defendants who made the trip to Seattle, including maintaining frequent communication with them and providing guidance on how to conduct the on-going investigation.

**ANSWER:**     To the extent that this paragraph is directed at Defendant Escarcida, Defendant Escarcida denies this paragraph.

138.     Even though no new non-fabricated evidence was discovered between the FBI's initial investigation and the reopened investigation in 2009, the Defendant Officers and Defendants Campbell, Trevarthen, and Escarcida all agreed to claim that there was probable cause to arrest Plaintiff for the murder even though they knew that there was not.

**ANSWER:**     To the extent that this paragraph is directed at Defendant Escarcida, Defendant Escarcida denies this paragraph.

## Plaintiff's False Arrest, Interrogation, and Prosecution

139.     Nonetheless, Plaintiff was arrested in Seattle, Washington in June 2011, over fifty years after the murder.

**ANSWER:**     Defendant Escarcida admits this paragraph.

140.     Given the crime's notoriety and the half a century gap between crime and arrest, Mr. McCullough's arrest made headlines in media sources across the country.

**ANSWER:**        Defendant Escarcida admits that Plaintiff's arrest received media attention but
                   lacks sufficient knowledge in which to admit or deny the remaining allegations in
                   this paragraph and therefore, denies the same.

       141.        Given the widespread media coverage, the Defendants were even more
determined to ensure Plaintiff's conviction.

**ANSWER:**        To the extent that this paragraph is directed at Defendant Escarcida, Defendant
                   Escarcida denies this paragraph.

       142.        Following Plaintiff's arrest, he was brought to Defendant Seattle Police Detective
Lau to be interrogated.

**ANSWER:**        Defendant Escarcida admits that after his arrest, Plaintiff was interviewed by
                   Detective Lau. Defendant Escarcida lacks sufficient knowledge in which to admit
                   or deny the remaining allegations in this paragraph and therefore, denies the
                   same.

       143.        Before doing so, and even though he was in custody, the arresting Defendants
failed to provide Plaintiff with his Miranda warnings and launched into an interview – a mistake
they would later attempt to "cure."

**ANSWER:**        Defendant Escarcida lacks sufficient knowledge in which to admit or deny this
                   paragraph and therefore, denies the same.

       144.        Defendant Lau created a report of her interrogation, in which she attempted to
falsely portray Mr. McCullough as unnaturally fixated on Maria.

**ANSWER:**        Defendant Escarcida admits that Detective Lau created a report of her questioning
                   of Plaintiff.  Defendant Escarcida lacks sufficient knowledge in which to admit or
                   deny the remaining allegations in this paragraph and therefore, denies the same.

       145.        Defendant Lau falsely claimed that Mr. McCullough "described [Maria Ridulph]
as being very stunningly beautiful with big brown eyes and he stated that she was 'lovely, lovely,
lovely.'"

**ANSWER:**        Defendant Escarcida admits that Defendant Lau stated in her report that
                   McCullough "described [Maria Ridulph] as being very stunningly beautiful with
                   big brown eyes and he stated that she was 'lovely, lovely, lovely.'" Defendant
                   Escarcida lacks sufficient knowledge in which to admit or deny the remaining
                   allegations in this paragraph and therefore, denies the same.

       146.        As the video of the interrogation bears out, it was Defendant Lau who called
Maria beautiful, not Mr. McCullough, and Mr. McCullough said nothing about Maria's
appearance until Lau tried to goad him by saying "bi-racial" couples "make the most beautiful

kids," suggesting that Maria had multi-ethnic parents. Mr. McCullough simply agreed with Lau that Maria was adorable with big brown eyes. Defendant Lau's report omitted her own precursor statements about Maria's appearance.

**ANSWER:** Defendant Escarcida lacks sufficient knowledge in which to admit or deny this paragraph and therefore, denies the same.

147. Further, Defendant Lau suggested that Mr. McCullough's (fabricated) statements were even more incriminating because of his demeanor when he made them. According to Defendant Lau, when Mr. McCullough discussed Maria Ridulph, his "entire face changed. It softened and…he had just totally relaxed at this point." Driving the point further, Defendant Lau claimed that Mr. McCullough "was pretty angry" and "alternated between rage and calm," during his interview, but that when he discussed Maria he supposedly became eerily calm. The video demonstrates that there was no significant change in Mr. McCullough's volume, posture, or demeanor when he mentioned Maria, nor was there any indication that Mr. McCullough was angry or enraged during the interview.

**ANSWER:** Defendant Escarcida lacks sufficient knowledge in which to admit or deny this paragraph and therefore, denies the same.

148. Following his interrogation in Seattle, Defendants Steiger and Ciesynski assisted Defendants Hanley and Damasky with extraditing Plaintiff from Washington to Illinois. Defendants Steiger and Ciesynski accompanied Plaintiff on the flight from Seattle to Chicago, and then drove him to Sycamore, including to the scene of the abduction.

**ANSWER:** Defendant Escarcida admits that Defendants Steiger and Ciesynski accompanied Plaintiff on the flight from Seattle to Chicago and the drive from Chicago to Sycamore. Defendant Escarcida lacks sufficient knowledge in which to admit or deny the remaining allegations in this paragraph and therefore, deny the same.

149. Throughout this transportation, Defendants Steiger and Ciesynski questioned Plaintiff continuously.

**ANSWER:** Defendant Escarcida lacks sufficient knowledge in which to admit or deny this paragraph and therefore, denies the same.

150. Defendants Steiger, Ciesynski, and Lau's work with the Illinois-based Defendants did not end there. Both Steiger and Ciesynski traveled to Illinois between December 16 and 22, 2011, meeting with Defendants Hanley, Campbell, Trevarthen, Escarcida, and possibly other Defendants, and discussing this case.

**ANSWER:** Defendant Escarcida admits that he met with Steiger and Ciesynski when they traveled to Illinois between December 16 and 22, 2011. Defendant Escarcida

lacks sufficient knowledge in which to admit or deny the remaining allegations in this paragraph and therefore, denies the same.

151.     When Mr. McCullough's trial took place in 2012, Defendants Steiger, Ciesynski, and Lau traveled to Illinois to participate and testify in the trial. This participation included Defendant Lau reiterating the false information that was used to implicate Mr. McCullough in Maria's disappearance and murder.

**ANSWER:**     Defendant Escarcida admits that in 2012, Defendants Steiger, Ciesynski, and Lau traveled to Illinois testify at Plaintiff's trial.  Defendant Escarcida lacks sufficient knowledge in which to admit or deny the remaining allegations in this paragraph and therefore, denies the same.

152.     At this trial, the video evidence from Mr. McCullough's polygraph interview that would disprove Defendant Lau's testimony was withheld from him and he had no means to rebut her fabricated account. The prosecution relied on Defendant Lau's false evidence in closing arguments.

**ANSWER:**     Defendant Escarcida admits that a video of Plaintiff's polygraph interview with Lau was not tendered to Plaintiff in discovery.  Defendant Escarcida denies the remaining allegations in this paragraph.

153.     According to the director of the Illinois State Police, "had it not been for the assistance of the Seattle Police Department, it is unlikely that charges against Mr. McCullough would have been approved."

**ANSWER:**     Defendant Escarcida lacks sufficient knowledge in which to admit or deny this paragraph and therefore, denies the same.

**Defendants Fabricate False "Informant" Testimony and Conceal Their Misconduct**

154.     Knowing their false case against Plaintiff rested on thin reeds, Defendant Hanley decided to manufacture more false evidence against Plaintiff through convicted felons, to whom they offered deals to falsely claim that Plaintiff had confessed.

**ANSWER:**     Defendant Escarcida lacks sufficient knowledge in which to admit or deny this paragraph and therefore, denies the same.

155.     As a result, Defendant Hanley was able to get two of the felons to falsely implicate Plaintiff in Maria's kidnapping and murder – Kirk Swaggerty and Matthew Reimann. These individuals gave false testimony that Plaintiff had suggested and even confessed that he had been involved in the crime, when, in fact, Mr. McCullough never said any such thing to anyone, let alone these men.

**ANSWER:**     Defendant Escarcida lacks sufficient knowledge in which to admit or deny this paragraph and therefore, denies the same.

156.    Defendant Hanley recruited these so-called "informants" and caused them to provide false evidence implicating Plaintiff in the crime, all while knowing that these statements were entirely false.

**ANSWER:**     Defendant Escarcida lacks sufficient knowledge in which to admit or deny this paragraph and therefore, denies the same.

157.    Defendant Hanley made improper, undisclosed promises and offered impermissible incentives to these individuals. The entire time, Defendant Hanley concealed information about the improper promises he made and the misconduct used to secure these false statements.

**ANSWER:**     Defendant Escarcida lacks sufficient knowledge in which to admit or deny this paragraph and therefore, denies the same.

158.    At the time of Mr. McCullough's trial, both Swaggerty and Reimann had petitions before a trial court to either reconsider their sentence or vacate their convictions.

**ANSWER:**     Defendant Escarcida lacks sufficient knowledge in which to admit or deny this paragraph and therefore, denies the same.

159.    When they testified at Mr. McCullough's trial, both Swaggerty and Reimann stated that they were not offered anything in return for their testimony, and that no deals or promises had been made. These statements were false.

**ANSWER:**     Defendant Escarcida admits Swaggerty and Reimann testified that they were not offered anything from the State's Attorney's Office in return for their testimony. Defendant Escarcida denies the remaining allegations in this paragraph.

160.    To elaborate, Kirk Swaggerty was another inmate housed at the DeKalb County Jail while Plaintiff was incarcerated there awaiting trial.

**ANSWER:**     Defendant Escarcida admits this paragraph.

161.    In February 2012, Defendant Hanley traveled to Menard Correctional Center to meet with Swaggerty. Defendant Hanley knew that Plaintiff was innocent, but nonetheless wanted to see if he could induce Swaggerty to falsely implicate Mr. McCullough.

**ANSWER:**     Defendant Escarcida admits that in February 2012, Defendant Hanley traveled to Menard Correctional Center to meet with Swaggerty. Defendant Escarcida denies the remaining allegations in this paragraph.

162.    Although Swaggerty was initially reluctant, he agreed to make falsely claim that Plaintiff had confessed to him.

**ANSWER:**    Defendant Escarcida denies this paragraph.

163.    After two days of meeting with Defendant Hanley, Swaggerty agreed to implicate Plaintiff, but his account of Mr. McCullough's purported confession lacked enough detail to be believable. Hanley indicated to Swaggerty that if he fabricated an account of how Mr. McCullough committed the murder, his account would be more believable and he would be eligible to get a deal from the prosecution on his current sentence. Hanley also suggested to Swaggerty that he could help their prosecution of Plaintiff if he claimed that Mr. McCullough was fixated on Maria's beauty, thereby corroborating Defendant Lau's lies detailed above.

**ANSWER:**    Defendant Escarcida denies this paragraph.

164.    Sure enough, less than two weeks after meeting with Hanley, Swaggerty wrote Hanley claiming that he had just "remembered" that Plaintiff suffocated Maria and that he described Maria as "very pretty."

**ANSWER:**    Defendant Escarcida admits that in February 2012, Swaggerty wrote Hanley a letter in which he stated: "After you left I started thinking about what all Jack told me and I remembered Jack saying he suffocated her.  He said he was trying to stop her from screaming and she suffocated.  He said it was an accident and he didn't mean to kill her.  Then he said, as if reminiscing 'she was very pretty!'".  Defendant Escarcida denies the remaining allegations in this paragraph.

165.    At Plaintiff's trial, Mr. Swaggerty testified to these false statements as a direct result of Hanley's manipulation and promises of leniency. Swaggerty did not disclose the incentives he had been promised.

**ANSWER:**    Defendant Escarcida admits that Mr. Swaggerty testified at trial.  To the extent any of the remaining allegations in this paragraph are directed at Defendant Escarcida, Defendant Escarcida denies those allegations.

166.    When Plaintiff was convicted, he did not know that Swaggerty's testimony was fabricated by Hanley or provided based on a promise that the prosecution would assist him to get a reduced sentence.

**ANSWER:**    To the extent that this paragraph is directed at Defendant Escarcida, Defendant Escarcida denies that she made any promises to Swaggerty.  Defendant Escarcida lacks sufficient knowledge in which to admit or deny any of the remaining allegations in this paragraph and therefore, denies the same.

167.    Likewise, Matthew Reimann was briefly incarcerated at the DeKalb County Jail from August 30, 2012 to September 5, 2012 while his post-conviction petition was pending. During this time, Reimann and Plaintiff were both housed at DeKalb County Jail.

**ANSWER:**    Defendant Escarcida admits this paragraph.

168.    On September 6, 2012, Reimann returned to Stateville Correctional Center near Joliet, a maximum security prison. The next day, Defendant Hanley visited him at Stateville to interview him about his interactions with Plaintiff, but he was reluctant to cooperate.

**ANSWER:**    Defendant Escarcida lacks sufficient knowledge in which to admit or deny this paragraph and therefore, denies the same.

169.    Nevertheless, Defendant Hanley persisted. To coax Reimann into providing false testimony, and in exchange for his agreement to testify, Defendant Hanley told him he would have the prosecutor waive an untimeliness defense for Reimann's post-conviction petition and to reduce his security classification so that he would receive a favorable transfer to a preferable facility. Defendant Hanley also agreed to obtain a gag-order to conceal Reimann's identity.

**ANSWER:**    Defendant Escarcida lacks sufficient knowledge in which to admit or deny this paragraph and therefore, denies the same.

170.    On September 12, 2012, Reimann was remanded back to the DeKalb County Jail and was placed in an interrogation room with Defendants Hanley, Escarcida, and Trevarthen During this meeting, Defendants assured Reimann that his identity would be concealed. They also instructed Reimann to deny that there was a "deal" or any "promises" relating to his agreement to testify, as this would undermine the value of his testimony.

**ANSWER:**    Defendant Escarcida admits that Defendants Escarcida and Trevarthen met with Reimann on September 12, 2012 for the purpose of preparing Reimann to testify at trial.  Defendant Escarcida denies the remaining allegations in this paragraph.

171.    As a result of the incentives that he was promised, Reimann made inculpatory statements about Plaintiff during the trial, falsely claiming that Plaintiff had confessed to him and that he had not received anything in exchange for his testimony.

**ANSWER:**    To the extent that this paragraph is directed at Defendant Escarcida, Defendant Escarcida denies that he made any promises to Reimann.  Defendant Escarcida lacks sufficient knowledge in which to admit or deny any of the remaining allegations in this paragraph and therefore, denies the same.

172.    When Plaintiff was convicted, Plaintiff had no idea that Reimann had been provided incentives for his testimony.

**ANSWER:**   To the extent that this paragraph is directed at Defendant Escarcida, Defendant Escarcida denies that he provided any incentives to Reimann. Defendant Escarcida lacks sufficient knowledge in which to admit or deny any of the remaining allegations in this paragraph and therefore, denies the same.

173.   Upon his return to Stateville Correctional Center, Reimann became concerned that his identity had been revealed. He wrote his attorney several times to inquire about potential violations of the gag-order and to determine when he would receive the incentives he had been promised.

**ANSWER:**   Defendant Escarcida lacks sufficient knowledge in which to admit or deny this paragraph and therefore, denies the same.

174.   In response, and as an act of further misconduct, Defendant Hanley arranged to have a secret meeting with Reimann on November 30, 2012. The November 30 entry from the Stateville visitor log reflects that Hanley used an alias, Quinn Brady, in order to disguise his identity when he signed in to see Reimann. In addition, Hanley listed his address as "506 N. County Road, Wheaton, Illinois," an address which does not exist. The DuPage County Sheriff's Department, however, resides at 501 N. County Farm Road, Wheaton, Illinois, and the DuPage County Courthouse is located at 505 N. County Farm Road, Wheaton, Illinois.

**ANSWER:**   Defendant Escarcida lacks sufficient knowledge in which to admit or deny this paragraph and therefore, denies the same.

175.   Within a few months, Reimann's classification was reduced in accordance with the undisclosed agreement he had made with Defendants.

**ANSWER:**   To the extent that this paragraph is directed at Defendant Escarcida, Defendant Escarcida denies that he made any agreements with Reimann. Defendant Escarcida lacks sufficient knowledge in which to admit or deny any of the remaining allegations in this paragraph and therefore, denies the same.

176.   Defendant Hanley's misconduct was not limited to the two witnesses that he actually succeeded in getting to provide false testimony, but also included others who, when offered the deal, refused to provide false testimony against Plaintiff. For example, sometime between November 2012 and January 2013, Defendant Hanley and another investigator contacted Mike Greenwall, an inmate at Stateville who had spent time at DeKalb County Jail.

**ANSWER:**   Defendant Escarcida lacks sufficient knowledge in which to admit or deny this paragraph and therefore, denies the same.

177.   Defendant Hanley met with Greenwall to see if he could persuade Greenwall to provide false testimony against Plaintiff.

**ANSWER:**     Defendant Escarcida lacks sufficient knowledge in which to admit or deny this paragraph and therefore, denies the same.

178.    Greenwall was unwilling to lie for Hanley.

**ANSWER:**     Defendant Escarcida lacks sufficient knowledge in which to admit or deny this paragraph and therefore, denies the same.

179.    Nevertheless, at the conclusion of their meeting, Defendant Hanley asked Greenwall whether Reimann had been reclassified yet and stated that he was working on obtaining a transfer for him, in hopes that Greenwall would understand that Hanley could provide similar services for him as well. Defendant Hanley then left a card with Greenwall with instructions to let him know if there was ever anything that he could for him.

**ANSWER:**     Defendant Escarcida lacks sufficient knowledge in which to admit or deny this paragraph and therefore, denies the same.

180.    The suppression of the foregoing information was prejudicial to Plaintiff. If Mr. McCullough had been given access to this information about witnesses, it would have been powerful evidence of his innocence and critical evidence by which he could have impeached the prisoners who testified falsely against him.

**ANSWER:**     To the extent that this paragraph is directed at Defendant Escarcida, Defendant Escarcida denies that he suppressed any information or evidence from Plaintiff. Defendant Escarcida lacks sufficient knowledge in which to admit or deny any of the remaining allegations in this paragraph and therefore, denies the same.

181.    However, Defendant Hanley concealed the misconduct described above from Plaintiff and his criminal defense attorneys.

**ANSWER:**     To the extent that this paragraph is directed at Defendant Escarcida, Defendant Escarcida denies that he engaged in any misconduct. Defendant Escarcida lacks sufficient knowledge in which to admit or deny any of the remaining allegations in this paragraph and therefore, denies the same.

182.    The Defendants' misconduct deprived Plaintiff of evidence that would have established further that he had no connection to the kidnappings and murder of Maria Ridulph.

**ANSWER:**     To the extent that this paragraph is directed at Defendant Escarcida, Defendant Escarcida denies that he engaged in any misconduct or deprived Plaintiff of any evidence.  Defendant Escarcida lacks sufficient knowledge in which to admit or deny any of the remaining allegations in this paragraph and therefore, denies the same.

183.    On September 10, 2012, Plaintiff's bench trial began in the DeKalb County Circuit Court.

**ANSWER:**    Defendant Escarcida admits this paragraph.

184.    The next day, September 11, 2012, the State called Kathy Sigman Chapman as a witness.  During her examination, Defendant Trevarthen questioned Chapman about the identification she made from the photo lineup she was shown by Defendants Hanley, Damasky, and Smith - the same lineup that was approved by Defendant Engerman.

**ANSWER:**    Defendant Escarcida admits that on September 11, 2012, the State called Kathy Sigman Chapman as a witness and that Defendant Trevarthen questioned Chapman about her identification of McCullough from the photo lineup. Defendant Escarcida denies the remaining allegations in this paragraph

185.    On the stand, Kathy Sigman Chapman testified that she had identified Plaintiff from that photo array.  This unreliable and impermissibly suggestive identification undermined the fairness of Plaintiff's criminal trial.

**ANSWER:**    Defendant Escarcida admits that Kathy Sigman Chapman testified that she had identified Plaintiff from the photo array.  Defendant Escarcida denies the remaining allegations in this paragraph.

186.    On September 14, 2012, Jack McCullough was wrongfully convicted of the kidnapping and murder of Maria Ridulph.  On December 10, 2012, Mr. McCullough received a life sentence.

**ANSWER:**    Defendant Escarcida admits that on September 14, 2012, Plaintiff was convicted of the kidnapping and murder of Maria Ridulph and that on December 10, 2012, Plaintiff received a life sentence.  Defendant Escarcida denies the remaining allegations in this paragraph.

187.    Neither Plaintiff nor his criminal defense counsel were aware at the time of Plaintiff's criminal trial of the concealment of exculpatory evidence, fabrication of inculpatory evidence, and manipulation of the eyewitness that is set forth in this Complaint.  Had these facts been disclosed, Plaintiff would not have been convicted.

**ANSWER:**    To the extent that this paragraph is directed at Defendant Escarcida, Defendant Escarcida denies that he concealed exculpatory evidence, fabricated inculpatory evidence or manipulated any eyewitness.  As to the remaining allegations in this paragraph, Defendant Escarcida  lacks sufficient knowledge in which to admit or deny those allegations and therefore, denies the same.

**Plaintiff's Exoneration**

188.     Throughout his wrongful incarceration, Jack McCullough maintained his innocence and that he was wrongfully convicted.

**ANSWER:**     To the extent that this paragraph is directed at Defendant Escarcida, Defendant Escarcida denies that Plaintiff was wrongfully incarcerated. As to the remaining allegations in this paragraph, Defendant Escarcida lacks sufficient knowledge in which to admit or deny those allegations and therefore, denies the same.

189.     Mr. McCullough spent four years incarcerated for a crime that he did not commit.

**ANSWER:**     Defendant Escarcida admits that Plaintiff was incarcerated for four years and denies the remaining allegations in this paragraph.

190.     In 2016, Plaintiff's conviction was vacated and he was released from prison. Plaintiff's conviction was vacated after the new DeKalb County State's Attorney Richard Schmack – who had replaced Defendant Campbell – moved to dismiss all charges against Plaintiff.

**ANSWER:**     Defendant Escarcida admits this paragraph.

191.     In so doing, the DeKalb County State's Attorney's office declared that the People of the State of Illinois were compelled to admit the existence of clear and convincing evidence showing that Plaintiff was convicted for a crime he did not commit. In so doing, acting on behalf of the People of the State of Illinois, State's Attorney Schmack admitted that the FBI's initial investigation of Plaintiff was accurate in excluding him as being the perpetrator. On behalf of the People of the State of Illinois, District Attorney Schmack further admitted that there had not ever been a reasonable hypothesis for the false claim proffered by the Defendants that the abduction happened earlier in the day than previously reported.

**ANSWER:**     Defendant Escarcida admits that Richard Schmack made statements in pleadings that it was his position that there was existence of clear and convincing evidence that Plaintiff was convicted for a crime he did not commit. Defendant Escarcida denies the remaining allegations in this paragraph.

192.     In addition to admitting many of the other claims alleged above, the State also acknowledged that the warrant for Plaintiff's arrest contained false and materially misleading statements, and that Plaintiff's indictment was secured through false and/or misleading testimony.

**ANSWER:**     Defendant Escarcida admits that Richard Schmack made statements in pleadings that the warrant for Plaintiff's arrest contained materially incorrect and misleading statements and that testimony was presented to the grand jury that was

clearly erroneous and misleading. Defendant Escarcida denies the remaining allegations in this paragraph.

193.     Subsequently, in April of 2017, Plaintiff was granted a Certificate of Innocence by the Circuit Court for the Twenty Third Judicial Circuit in DeKalb County, Illinois.

**ANSWER:**     Defendant Escarcida admits this paragraph.

194.     After four years of incarceration, and over seven years of struggles and difficulties as a result of Defendants' misconduct, Plaintiff has been made free – as a formal matter – from his wrongful conviction.

**ANSWER:**     To the extent that this paragraph was directed at Defendant Escarcida, Defendant Escarcida denies that he engaged in any misconduct. Defendant Escarcida lacks sufficient knowledge in which to admit or deny the remaining allegations in this paragraph and therefore, denies the same.

### Plaintiff's Damages

195.     However, Plaintiff is not free of the severe damages that have been inflicted upon him over the greater part of the last decade due to Defendants' misconduct.

**ANSWER:**     To the extent that this paragraph is directed at Defendant Escarcida, Defendant Escarcida denies that he engaged in any misconduct. Defendant Escarcida lacks sufficient knowledge in which to admit or deny the remaining allegations in this paragraph and therefore, denies the same.

196.     Mr. McCullough spent over 4 years in prison for a crime he did not commit, and over 7 years fighting to clear his name. While in prison, Plaintiff was targeted owing to the nature of the crime for which he had been wrongfully convicted and given a life sentence. Plaintiff was attacked, despite being at a physical disadvantage due to his age. As but one example, a fellow inmate tried to kill Mr. McCullough by stabbing him in the eye, which Plaintiff survived only by using combat technique he learned in the military.

**ANSWER:**     Defendant Escarcida admits that Plaintiff spent over 4 years in prison. Defendant Escarcida lacks sufficient knowledge in which to admit or deny the remaining allegations in this paragraph and therefore, denies the same.

197.     Although exonerated, Mr. McCullough must now attempt to resume his life despite the horrors he endured while imprisoned for a crime he did not commit.

**ANSWER:**      Defendant Escarcida lacks sufficient knowledge in which to admit or deny the allegations in this paragraph and therefore, denies the same.

198.    Plaintiff was due to retire, but those efforts have been hampered by his wrongful conviction. In addition, Plaintiff has lost the precious time to be with his family, and watch his grandchildren age – something he can never get back.

**ANSWER:**    Defendant Escarcida lacks sufficient knowledge in which to admit or deny the allegations in this paragraph and therefore, denies the same.

199.    As a result of the foregoing, Mr. McCullough has suffered tremendous damage, including physical harm and mental suffering, all proximately caused by Defendants' misconduct.

**ANSWER:**    To the extent that this paragraph is directed at Defendant Escarcida, Defendant Escarcida denies that he engaged in any misconduct. Defendant Escarcida lacks sufficient knowledge in which to admit or deny the remaining allegations in this paragraph and therefore, denies the same.

## COUNT I – 42 U.S.C. § 1983
## Suppression of Exculpatory Material

200.    Each paragraph of this Complaint is incorporated as if restated fully herein.

**ANSWER:**    Defendant Escarcida is not a party defendant from which Plaintiff seeks relief in Count I.  Therefore, Defendant Escarcida  makes no answer to this Count I of Plaintiff's Complaint.

201.    As described more fully above, all of the Defendant Police Officers while acting individually, jointly, and/or in conspiracy, as well as under color of law and within the scope of their employment, deprived Plaintiff of his constitutional right to a fair trial.

**ANSWER:**    Defendant Escarcida is not a party defendant from which Plaintiff seeks relief in Count I.  Therefore, Defendant Escarcida makes no answer to this Count I of Plaintiff's Complaint.

202.    In the manner described more fully above, the Defendant Police Officers and individually, jointly, and/or in concert and in conspiracy:

a)    fabricated evidence including but not limited to police false police reports, false informant testimony, and unreliable "identification" evidence;

b)    used improper and suggestive procedures to taint the pretrial identifications of Plaintiff and caused Plaintiff to be misidentified as the perpetrator; and

c)    deliberately withheld and concealed exculpatory evidence-including but not limited to their misconduct in procuring, or attempting to procure, false informant

testimony, as well as secreting other misconduct related to interviews they took. In doing so, the Defendants violated their clearly established duty to disclose and report all material exculpatory and impeachment information.

**ANSWER:**     Defendant Escarcida is not a party defendant from which Plaintiff seeks relief in Count I.  Therefore, Defendant Escarcida makes no answer to this Count I of Plaintiff's Complaint.

203.     Absent these Defendants' misconduct, Plaintiff' could not and would not have been further prosecuted, and Plaintiff would not have been convicted.

**ANSWER:**     Defendant Escarcida is not a party defendant from which Plaintiff seeks relief in Count I.  Therefore, Defendant Escarcida makes no answer to this Count I of Plaintiff's Complaint.

204.     These Defendants' misconduct directly and proximately resulted in the unjust and wrongful criminal conviction of Plaintiff and his continuing wrongful imprisonment, thereby denying him his constitutional right to a fair trial, in violation of the Fifth Amendment and the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

**ANSWER:**     Defendant Escarcida is not a party defendant from which Plaintiff seeks relief in Count I.  Therefore, Defendant Escarcida makes no answer to this Count I of Plaintiff's Complaint.

205.     As a direct and proximate result of this violation of his constitutional rights to due process and to a fair trial, Plaintiff suffered injuries, including but not limited to loss of liberty, physical harm, and emotional distress.

**ANSWER:**     Defendant Escarcida is not a party defendant from which Plaintiff seeks relief in Count I.  Therefore, Defendant Escarcida makes no answer to this Count I of Plaintiff's Complaint.

206.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice and willful indifference to Plaintiff's clearly established constitutional rights.

**ANSWER:**     Defendant Escarcida is not a party defendant from which Plaintiff seeks relief in Count I.  Therefore, Defendant Escarcida makes no answer to this Count I of Plaintiff's Complaint.

## COUNT II – 42 U.S.C. § 1983
## Suggestive Identification

207.    Each paragraph of this Complaint is incorporated as if restated fully herein.

**ANSWER:**    Defendant Escarcida is not a party defendant  from which Plaintiff seeks relief in Count II.  Therefore, Defendant Escarcida makes no answer to this Count II of Plaintiff's Complaint.

208.    As described more fully above, Defendants Hanley and Smith, active individually and in conspiracy with each other, used improper and suggestive procedures to cause Plaintiff to be misidentified as the perpetrator.  This misconduct tainted the pretrial identification of Mr. McCullough, which was offered at trial.

**ANSWER:**    Defendant Escarcida is not a party defendant from which Plaintiff seeks relief in Count II.  Therefore, Defendant Escarcida makes no answer to this Count II of Plaintiff's Complaint.

209.    As a result of this violation, Plaintiff was deprived of his right to a fair trial and was falsely convicted of a crime for which he was innocent.

**ANSWER:**    Defendant Escarcida is not a party defendant from which Plaintiff seeks relief in Count II.  Therefore, Defendant Escarcida makes no answer to this Count II of Plaintiff's Complaint.

210.    These Defendants were acting under color of law and within the scope of their employment when they took these acts.

**ANSWER:**    Defendant Escarcida is not a party defendant from which Plaintiff seeks relief in Count II.  Therefore, Defendant Escarcida makes no answer to this Count II of Plaintiff's Complaint.

211.    As a direct and proximate result of this misconduct, Plaintiff sustained, and continues to sustain, injuries including the period of time following his arrest and before his conviction, as set forth above, including pain and suffering.

**ANSWER:**    Defendant Escarcida is not a party defendant from which Plaintiff seeks relief in Count II.  Therefore, Defendant Escarcida makes no answer to this Count II of Plaintiff's Complaint.

## COUNT III – 42 U.S.C. § 1983
## Failure to Intervene

212.     Each paragraph of this Complaint is incorporated as if restated fully herein.

**ANSWER:**     Defendant Escarcida restates and incorporates by reference his answers to each paragraph of this Complaint as if restated fully herein.

213.     In the manner described above, by their conduct and under color of law, during the constitutional violations described herein, each of the Defendants stood by without intervening to prevent the violation of Plaintiffs constitutional rights, even though they had the opportunity to do so.

**ANSWER:**     Defendant Escarcida denies this paragraph.

214.     As a direct and proximate result of the Defendants' failure to intervene to prevent the violation of Plaintiffs constitutional rights, Plaintiff suffered injuries, including but not limited to loss of liberty, physical harm, and emotional distress. These Defendants had a reasonable opportunity to prevent this harm, but failed to do so.

**ANSWER:**     Defendant Escarcida denies this paragraph.

215.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice and willful indifference to Plaintiff's clearly established constitutional rights.

**ANSWER:**     Defendant Escarcida denies this paragraph.

## COUNT IV – 42 U.S.C. § 1983
## Fabrication of Evidence

216.     Each paragraph of this Complaint is incorporated as if restated fully herein.

**ANSWER:**     Defendant Escarcida restates and incorporates by reference his answers to each paragraph of this Complaint as if restated fully herein

217.     In the manner described more fully above, all of the Defendants, individually, jointly and in conspiracy with each other, fabricated evidence, including fabricated testimony offered at trial proceedings.

**ANSWER:**     Defendant Escarcida denies this paragraph.

218.    The Defendants knowingly fabricated this evidence. A reasonable likelihood exists that the false evidence affected the decision of the jurors and the courts that considered this false evidence.

**ANSWER:**    Defendant Escarcida denies this paragraph.

219.    Defendants were acting under color of law and within their scope of employment when they took these actions.

**ANSWER:**    Defendant Escarcida denies that he engaged in "these actions" and therefore, denies this paragraph.

220.    The Defendants' misconduct directly resulted in Plaintiff's unjust incarceration, thereby denying his constitutional right to due process as guaranteed by the U.S. Constitution. Absent this misconduct, there would have been no probable cause for Plaintiff's detention, and Plaintiff's prosecution could not and would not have been pursued.

**ANSWER:**    Defendant Escarcida denies this paragraph.

221.    As a direct and proximate result of the Defendant' actions, Plaintiff's constitutional rights were violated and Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

**ANSWER:**    Defendant Escarcida denies this paragraph.

## COUNT V – 42 U.S.C. § 1983
## Unreasonable Pretrial Detention

222.    Each paragraph of this Complaint is incorporated as if restated fully herein.

**ANSWER:**    Defendant Escarcida restates and incorporates by reference its answers to each paragraph of this Complaint as if restated fully herein

223.    In the manner described above, all of the Defendant Police Officers and Prosecutor Defendants, acting as investigators, individually, jointly, and in conspiracy with one another, as well as under color of law and within the scope of their employment, deprived Plaintiff of his constitutional rights.

**ANSWER:**    Defendant Escarcida denies this paragraph.

224.    The Defendants accused Plaintiff of criminal activity and exerted influence to initiate, continue, and perpetuate judicial proceedings against Plaintiff without any probable cause for doing so, in violation of his rights secured by the Fourth Amendment.

**ANSWER:** Defendant Escarcida denies this paragraph.

225.    In so doing, these Defendants caused Plaintiff to be unreasonably seized and subjected improperly to judicial proceedings for which there was no probable cause. These judicial proceedings were instituted and continued maliciously, resulting in injury.

**ANSWER:** Defendant Escarcida denies this paragraph.

226.    As a result of the Defendants' false allegations and fabricated evidence, Plaintiff was seized in June 2011 and remained incarcerated from that day continuing on through his trial and until his eventual exoneration.

**ANSWER:** Defendant Escarcida denies this paragraph.

227.    As a result of Defendants' misconduct described in this County, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotion pain and suffering, and other grievous and continuing injuries and damages as set forth above.

**ANSWER:** Defendant Escarcida denies this paragraph.

228.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally in total disregard of the truth and Plaintiff's clear innocence.

**ANSWER:** Defendant Escarcida denies this paragraph.

## COUNT VI – Federal Law
## Conspiracy to Deprive Constitutional Rights

229.    Each paragraph of this Complaint is incorporated as if restated fully herein.

**ANSWER:** Defendant Escarcida restates and incorporates by reference his answers to each paragraph of this Complaint as if restated fully herein.

230.    In an effort to implicate Plaintiff in solving a "cold case," each the Defendants, acting within the scope of their employment and under color of law, agreed among themselves and with other individuals to act in concert in order to deprive Plaintiff of his constitutional rights, including his rights to be free of detention in the absence of probable cause, his right to due process, and his right to a fair trial, all as described in the various paragraphs of this Complaint.

**ANSWER:** Defendant Escarcida denies this paragraph.

231.    Additionally, before and after Plaintiff's conviction, the Defendants further conspired to deprive Plaintiff of exculpatory information to which he was lawfully entitled and which would have led either to his not being charged, his acquittal, or his more timely exoneration.

**ANSWER:**    Defendant Escarcida denies this paragraph.

232.    In this manner, each of the Defendants, acting in concert with other unknown co-conspirators, conspired by concerted action to accomplish an unlawful purpose by unlawful means.

**ANSWER:**    Defendant Escarcida denies this paragraph.

233.    In furtherance of the conspiracy, each of the co-conspirators engaged in and facilitated numerous overt acts, including but not limited to those set forth above and was an otherwise willful participant in joint activity.

**ANSWER:**    Defendant Escarcida denies this paragraph.

234.    As a direct and proximate result of the illicit prior agreement and actions in furtherance of the conspiracy referenced above, Plaintiff's rights were violated, and he suffered injuries, including but not limited to loss of liberty, physical harm, and emotional distress.

**ANSWER:**    Defendant Escarcida denies this paragraph.

235.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, willfulness, and deliberate indifference to Plaintiff's rights.

**ANSWER:**    Defendant Escarcida denies this paragraph.

## COUNT VII – State Law Claim
## Malicious Prosecution

236.    Each paragraph of this Complaint is incorporated as if restated fully herein.

**ANSWER:**    Defendant Escarcida is not a party defendant from which Plaintiff seeks relief in Count VII and therefore,  Defendant Escarcida makes no answer to this Count VII of Plaintiff's Complaint.

237.    The Defendant Police Officers accused Plaintiff of criminal activity knowing those accusations to be without genuine probable cause, and they made statements to prosecutors with the intent of exerting influence and to institute and continue the judicial proceedings.

**ANSWER:**    Defendant Escarcida is not a party defendant from which Plaintiff seeks relief in Count VII and therefore, Defendant Escarcida makes no answer to this Count VII of Plaintiff's Complaint.

238. These Defendants caused Plaintiff to be improperly subjected to judicial proceedings for which there was no probable cause. These judicial proceedings were instituted and continued maliciously, resulting in injury.

**ANSWER:**     Defendant Escarcida is not a party defendant from which Plaintiff seeks relief in Count VII and therefore, Defendant Escarcida makes no answer to this Count VII of Plaintiff's Complaint.

239. Statements of these Defendants regarding Plaintiff's alleged culpability were made with knowledge that said statements were false. Information presented to secure a warrant for Plaintiff's arrest was false and the officers knew, or were recklessly ignoring, the false and/or misleading nature of the information they used to procure Plaintiff's arrest. These Defendants also fabricated evidence through their actions in obtaining an "identification." The Defendants were aware that, as described more fully above, no true or reliable evidence implicated Plaintiff in the Ridulph abduction and homicide.

**ANSWER:**     Defendant Escarcida is not a party defendant from which Plaintiff seeks relief in Count VII and therefore, Defendant Escarcida makes no answer to this Count VII of Plaintiff's Complaint.

240. The misconduct described in this Count was undertaken intentionally, with malice, willfulness, and reckless indifference to the rights of others.

**ANSWER:**     Defendant Escarcida is not a party defendant from which Plaintiff seeks relief in Count VII and therefore, Defendant Escarcida makes no answer to this Count VII of Plaintiff's Complaint.

241. In 2016, the prosecution terminated in Plaintiff's favor when, after his conviction was vacated, the State dismissed the charges against him.

**ANSWER:**     Defendant Escarcida is not a party defendant from which Plaintiff seeks relief in Count VII and therefore, Defendant Escarcida makes no answer to this Count VII of Plaintiff's Complaint.

242. As a direct and proximate result of this misconduct, Plaintiff sustained, and continues to sustain, injuries as set forth above, including pain and suffering.

**ANSWER:**     Defendant Escarcida is not a party defendant from which Plaintiff seeks relief in Count VII and therefore, Defendant Escarcida makes no answer to this Count VII of Plaintiff's Complaint.

## COUNT VIII – State Law Claim
## Intentional Infliction of Emotional Distress

243. Each paragraph of this Complaint is incorporated as if restated fully herein.

**ANSWER:** Defendant Escarcida restates and incorporates by reference his answers to each paragraph of this Complaint as if restated fully herein.

244. The acts and conduct of all of the Defendants, as set forth above, were extreme and outrageous. The Defendants' actions were rooted in an abuse of power or authority, and they were undertaken with intent to cause, or were in reckless disregard of the probability that their conduct would cause, severe emotional distress to Plaintiff, as is more fully alleged above.

**ANSWER:** Defendant Escarcida denies this paragraph.

245. As a direct and proximate result of the Defendants' actions, Plaintiff suffered and continues to suffer severe emotional distress.

**ANSWER:** Defendant Escarcida denies this paragraph.

## Count IX – State Law Claim
## Civil Conspiracy

246. Each paragraph of this Complaint is incorporated as if restated fully herein.

**ANSWER:** Defendant Escarcida restates and incorporates by reference his answers to each paragraph of this Complaint as if restated fully herein.

247. As described more fully in the preceding paragraphs, all of the Defendants, acting in concert with other known and unknown co-conspirators, conspired by concerted action to accomplish an unlawful purpose by unlawful means.

**ANSWER:** Defendant Escarcida denies this paragraph.

248. In furtherance of the conspiracy, the Defendants committed overt acts and were otherwise willful participants in joint activity including but not limited to the malicious prosecution of Plaintiff and the intentional infliction of emotional distress upon him.

**ANSWER:** Defendant Escarcida denies this paragraph.

249. The misconduct described in this Count was undertaken intentionally, with malice, willfulness, and reckless indifference to the rights of others.

**ANSWER:** Defendant Escarcida denies this paragraph.

250.     As a direct and proximate result of the Defendants' conspiracy, Plaintiff suffered damages, including severe emotional distress and anguish, as is more fully alleged above.

**ANSWER:**     Defendant Escarcida denies this paragraph.

## COUNT X – State Law Claim
## Respondeat Superior

251.     Each paragraph of this Complaint is incorporated as if restated fully herein.

**ANSWER:**     Defendant Escarcida is not a party defendant from which Plaintiff seeks relief in Count X and therefore,  Defendant Escarcida makes no answer to this Count X of Plaintiff's Complaint.

252.     In committing the acts alleged in the preceding paragraphs, Defendants Lau, Steiger, and Ciesynski were members of, and agents of, the Seattle Police Department, acting at all relevant times within the scope of their employment and under color of law.

**ANSWER:**     Defendant Escarcida is not a party defendant from which Plaintiff seeks relief in Count X and therefore,  Defendant Escarcida makes no answer to this Count X of Plaintiff's Complaint.

253.     Defendant City of Seattle is liable as principals for all torts committed by its agents.

**ANSWER:**     Defendant Escarcida is not a party defendant from which Plaintiff seeks relief in Count X and therefore,  Defendant Escarcida makes no answer to this Count X of Plaintiff's Complaint.

## COUNT XI – State Law Claim
## Indemnification

254.     Each paragraph of this Complaint is incorporated as if restated fully herein.

**ANSWER:**     Defendant Escarcida is not a party defendant from which Plaintiff seeks relief in Count XI and therefore,  Defendant Escarcida makes no answer to this Count XI of Plaintiff's Complaint.

255.     Illinois and Washington law provide that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

**ANSWER:** Defendant Escarcida is not a party defendant from which Plaintiff seeks relief in Count XI and therefore, Defendant Escarcida makes no answer to this Count XI of Plaintiff's Complaint.

256.    The Individual Defendants are or were employees of either the City of Seattle, the Illinois State Police, or the County of DeKalb, Illinois, who were acting within the scope of their employment in committing the misconduct described herein.

**ANSWER:** Defendant Escarcida is not a party defendant from which Plaintiff seeks relief in Count XI and therefore, Defendant Escarcida makes no answer to this Count XI of Plaintiff's Complaint.

WHEREFORE, Defendant Victor Escarcida denies that the Plaintiff is entitled to any judgment whatsoever against him and prays this Honorable Court enter judgment in his favor and award him costs for defending this lawsuit.

## FIRST AFFIRMATIVE DEFENSE

NOW COMES Defendant, Victor Escarcida, by and through his attorneys, Ekl, Williams & Provenzale LLC, and for his First Affirmative Defense states as follows:

Defendant Victor Escarcida was at all relevant times acting in his capacity as a prosecutor for DeKalb County and therefore, is entitled to absolute prosecutorial immunity.

WHEREFORE, Defendant Victor Escarcida denies that the Plaintiff is entitled to any judgment whatsoever against him and prays this Honorable Court enter judgment in his favor and award him costs for defending this lawsuit.

## SECOND AFFIRMATIVE DEFENSE

NOW COMES Defendant, Victor Escarcida, by and through his attorneys, Ekl, Williams & Provenzale LLC, and for his Second Affirmative Defense states as follows:

Defendant Victor Escarcida did not violate clearly established constitutional rights of which a reasonable person would have known, thus entitling him to qualified immunity.

WHEREFORE, Defendant Victor Escarcida denies that the Plaintiff is entitled to any judgment whatsoever against him and prays this Honorable Court enter judgment in his favor and award him costs for defending this lawsuit.

## THIRD AFFIRMATIVE DEFENSE

NOW COMES Defendant, Victor Escarcida, by and through his attorneys, Ekl, Williams & Provenzale LLC, and for his Third Affirmative Defense states as follows:

Defendant Victor Escarcida is immune from Plaintiff's claims under 745 ILCS 10/2-201 of the Illinois Tort Immunity Act which provides that: "Except as otherwise provided by Statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused." 745 ILCS 10/2-201.

Defendant Victor Escarcida is immune from Plaintiff's claims under 745 ILCS 10/2-202 of the Illinois Tort Immunity Act which provides that: "A public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful or wanton conduct."

Defendant Victor Escarcida is immune from Plaintiff's claims under 745 ILCS 10/2-204 of the Illinois Tort Immunity Act which provides that: "Except as otherwise provided by statute, a public employee, as such and acting within the scope of his employment, is not liable for an injury caused by the act or omission of another person."

WHEREFORE, Defendant Victor Escarcida denies that the Plaintiff is entitled to any judgment whatsoever against him and prays this Honorable Court enter judgment in his favor and award him costs for defending this lawsuit.

## FOURTH AFFIRMATIVE DEFENSE

NOW COMES Defendant, Victor Escarcida, by and through his attorneys, Ekl, Williams & Provenzale LLC, and for his Fourth Affirmative Defense states as follows:

Plaintiff failed to mitigate the damages he claims to have sustained.

WHEREFORE, Defendant Victor Escarcida denies that the Plaintiff is entitled to any judgment whatsoever against him and prays this Honorable Court enter judgment in his favor and award him costs for defending this lawsuit.

## FIFTH AFFIRMATIVE DEFENSE

NOW COMES Defendant, Victor Escarcida, by and through his attorneys, Ekl, Williams & Provenzale LLC, and for his Fifth Affirmative Defense states as follows:

Plaintiff's state law claims for intentional infliction of emotional distress and conspiracy accrued more than two years prior to the filing of the Complaint and therefore, are time barred by the Statute of Limitations.

Plaintiff's Section 1983 claim for Unreasonable Pretrial Detention (Count V) accrued more than two years prior to the filing of the Complaint and therefore, are time barred by the Statute of Limitations.

WHEREFORE, Defendant Victor Escarcida denies that the Plaintiff is entitled to any judgment whatsoever against him and prays this Honorable Court enter judgment in his favor and award him costs for defending this lawsuit.

## SIXTH AFFIRMATIVE DEFENSE

NOW COMES Defendant, Victor Escarcida, by and through his attorneys, Ekl, Williams & Provenzale LLC, and for his Sixth  Affirmative Defense states as follows:

Plaintiff's claims against Defendant Escarcida are claims against a State official. At all relevant times, Defendant Escarcida was an Assistant State's Attorney and acting in such capacity and within the scope of his employment and authority. Therefore, Defendant Escarcida is entitled to sovereign immunity and the Illinois Court of Claims has sole and exclusive jurisdiction over Plaintiff's state law claims.

WHEREFORE, Defendant Victor Escarcida denies that the Plaintiff is entitled to any judgment whatsoever against him and prays this Honorable Court enter judgment in his favor and award him costs for defending this lawsuit.

## SEVENTH AFFIRMATIVE DEFENSE

NOW COMES Defendant, Victor Escarcida, by and through his attorneys, Ekl, Williams & Provenzale LLC, and for his Seventh Affirmative Defense states as follows:

Plaintiff's claims are barred by the doctrines of *res judicata* and collateral estoppel.

WHEREFORE, Defendant Victor Escarcida denies that the Plaintiff is entitled to any judgment whatsoever against him and prays this Honorable Court enter judgment in his favor and award him costs for defending this lawsuit.

## EIGHTH AFFIRMATIVE DEFENSE

NOW COMES Defendant, Victor Escarcida, by and through his attorneys, Ekl, Williams & Provenzale LLC, and for his Eighth Affirmative Defense states as follows:

There was probable cause for Plaintiff's detention, arrest, initiation of charges and prosecution.

WHEREFORE, Defendant Victor Escarcida denies that the Plaintiff is entitled to any judgment whatsoever against him and prays this Honorable Court enter judgment in his favor and award him costs for defending this lawsuit.

## NINTH AFFIRMATIVE DEFENSE

NOW COMES Defendant, Victor Escarcida, by and through his attorneys, Ekl, Williams & Provenzale LLC, and for his Ninth Affirmative Defense states as follows:

The chain between any of Defendant Escarcida's actions and Plaintiff's conviction and/or imprisonment was broken by one or more intervening/superceding exercises of independent judgment of another, including, but not limited to the plaintiff, law enforcement officers, witnesses, and judges.

WHEREFORE, Defendant Victor Escarcida denies that the Plaintiff is entitled to any judgment whatsoever against him and prays this Honorable Court enter judgment in his favor and award him costs for defending this lawsuit.

## TENTH AFFIRMATIVE DEFENSE

NOW COMES Defendant, Victor Escarcida, by and through his attorneys, Ekl, Williams & Provenzale LLC, and for his Tenth Affirmative Defense states as follows:

Any verdict or judgment obtained by Plaintiff must be reduced by application of the principle of set-off and therefore, any verdict or judgment must be reduced by any amount paid to Plaintiff by any other current or former defendant in this litigation, including the settlement amount of $350,000 paid by the City of Sycamore Defendants to Plaintiff.

WHEREFORE, Defendant Victor Escarcida denies that the Plaintiff is entitled to any judgment whatsoever against him and prays this Honorable Court enter judgment in his favor and award him costs for defending this lawsuit.

Victor Escarcida reserves the right to supplement these affirmative defenses as more information becomes available throughout the litigation of this matter. Victor Escarcida's investigation continues.

**JURY DEMAND**

Defendant Victor Escarcida hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

Respectfully submitted by:
By: s/ **Terry A. Ekl**
Terry A. Ekl [ #0727105 ]
Patrick L. Provenzale [ #6225879 ]
Tracy Stanker [ #6274868 ]
Nemura G. Pencyla [ #6225825 ]
Ekl, Williams & Provenzale LLC
Two Arboretum Lakes
901 Warrenville Road, Suite 175
Lisle, IL 60532
(630) 654-1624
(630) 654-8318 *Facsimile*
tekl@eklwilliams.com
pprovenzale@eklwilliams.com
tstanker@eklwilliams.com
npencyla@eklwilliams.com